INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN, LOCAL #1 OF RHODE ISLAND; Rhode Island Bricklayers and Allied Craftsmen Health & Welfare Fund; Rhode Island Bricklayers and Allied Craftsmen Pension Fund; Rhode Island Bricklayers and Allied Craftsmen Annuity Fund; Rhode Island Bricklayers and Allied Craftsmen Joint Apprenticeship Fund; and Bricklayers and Trowel Trades International Pension Fund, Plaintiffs,

v.

MENARD & CO. MASONRY BUILDING CONTRACTORS and the Edward Nunes Corporation, Defendants.

Civ. A. No. 85-0413-S.

United States District Court, D. Rhode Island.

Oct. 17, 1985.

**1458**

Abedon, Michaelson, Stanzler & Biener, Julius C. Michaelson, Providence, R.I., for plaintiffs.

Wistow, Barylick & Bruzzi, Inc., Robert S. Bruzzi, Providence, R.I., for defendant Menard.

Visconti & Heald, Ltd., Thomas W. Heald, Providence, R.I., for defendant Nunes.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This case, in the embryonic pleading stages, raises a set of interesting threshold questions. Nevertheless, the tangram is not so intricate as appears at initial blush.

### I.

To put matters into proper perspective, it is necessary first to parse the complaint. The action was brought on July 3, 1985 by six separate plaintiffs, viz., the International Union of Bricklayers and Allied Craftsmen, Local #1 of Rhode Island (the "Union") and a quintet of employee benefit funds (hereinafter collectively the "Funds").[1] The complaint is inartfully drawn. It comprises a single count, which embodies what are in reality multiple statements of claim. Inasmuch as landmines dot the legal terrain, the allegations must be carefully charted.

In what amounts to a jurisdictional statement, the complaint proclaims that the action is being prosecuted under both the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1381 and § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). The plaintiffs' jurisdictional claim is, by its terms, premised on both ERISA, specifically, §§ 1132(e)(1) and (f), and the LMRA, specifically §§ 185(a)–(c). The Funds are said to have dual personalities: each is styled as a "trust fund" established in accordance with the provisions of 29 U.S.C. § 186(c) and each is an "employee pension benefit plan" ("EBP") as delineated by 29 U.S.C. § 1002(2).

There are a brace of defendants. The first, Menard & Co. Masonry Building Contractors ("Menard"), is a Rhode Island corporation which is allegedly a party to a collective bargaining agreement ("Agreement") with the Union. Although the Agreement is neither appended to the complaint nor otherwise of record in this proceeding, the plaintiffs aver that it contains provisions requiring Menard (i) to make certain contributions to the Funds, depending upon the number of hours worked by employees subject to the Agreement, and (ii) to effectuate certain deductions from wages due to those employees who enjoy membership in the Union (principally in the form of a dues check-off) and to remit the retained amounts to the Union. The second defendant, The Edward Nunes Corporation ("Nunes"), is likewise a Rhode Island corporation; Nunes is alleged to be

---

**1.** The Funds comprise (i) the Rhode Island Bricklayers and Allied Craftsmen Health & Welfare Fund, (ii) the Rhode Island Bricklayers and Allied Craftsmen Pension Fund, (iii) the Rhode Island Bricklayers and Allied Craftsmen Annuity Fund, (iv) the Rhode Island Bricklayers and Allied Craftsmen Joint Apprenticeship Fund,

the "alter ego" of Menard.[2] The plaintiffs say that Nunes, as an alter ego, is bound by and subject to all of the burdens and obligations of the Agreement.

The complaint points out that, as the plaintiffs see it, the defendants have failed for the last several years in their contractual duty to tender monies to the Funds and to deduct and remit check-off sums due to the Union. (Although not alleged in so many words, the sense of the complaint seems to be that Menard has used Nunes as a subterfuge in an effort to evade these responsibilities, and that the shortfall in payments relates to hours worked by persons nominally on Nunes's payroll—but who are, in reality, part and parcel of Menard's workforce.) The Funds claim entitlement to the delinquent contributions, together with interest and associated penalties specified in the Agreement; the Union claims entitlement to the missing check-off payments, along with interest and the like as per the Agreement. And, the plaintiffs pray, inter alia, for liquidated damages under ERISA, see 29 U.S.C. § 1132(g)(2), disbursements authorized by the same legislation, id. at § 1132(g)(1), and a full audit (the cost of which should, in their view, be borne by Menard and/or Nunes).

The defendants are alleged to be jointly and severally liable to the Funds and to the Union. Both Menard and Nunes are, according to the complaint, employers engaged in an industry affecting commerce, within the collective definitions ascribed to that incantation by ERISA, 29 U.S.C. §§ 1002(5), (11), (12), and by the LMRA, 29 U.S.C. §§ 152(2), (6), (7).

## II.

Following service of the complaint, Menard moved to dismiss for want of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and for the supposed failure of the real parties in interest to prosecute the action. Fed.R.Civ.P. 17(a).[3] Nunes, through distinct counsel, filed a substantially identical motion. The plaintiffs objected. Oral arguments were heard by the court on September 18, 1985, and the matter was taken under advisement. The court now turns to the task at hand, cognizant withal that, on threshhold motions such as these, it must accept as true all facts well-pleaded in the complaint, affording to the plaintiffs the benefit of all favorable inferences reasonably to be drawn therefrom. *Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees*, 717 F.2d 726, 729 n. 1 (2d Cir.1983); *Fricker v. Town of Foster*, 596 F.Supp. 1353, 1354 (D.R.I.1984) ("the court will not dismiss a complaint for want of subject matter jurisdiction unless it clearly appears that no colorable hook exists upon which the court's jurisdiction may be hung").

## III.

### A. *ERISA Jurisdiction*

The plaintiffs' initial handhold on the jurisdictional ladder is their claim that, inasmuch as the Funds fall within the definitional purview of ERISA, see 29 U.S.C. § 1002(2), ERISA confers subject matter jurisdiction over their attempt to force the defendants to disgorge omitted plan contributions. But, the matter is not as cut-and-dried as the Funds suggest.

The federal district courts possess limited, rather than plenary, jurisdiction. The boundaries of that jurisdiction are subject to the will of Congress. Federal courts should not widen the encincture of their jurisdiction without clear authority from the national legislature. *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 13–18,

and (v) the Bricklayers and Trowel Trades International Pension Fund.

**2.** This court has recently had occasion to discuss, in a state law context, the generic principles which apply when it is alleged that multiple corporations have been so controlled and operated that disregard of their individual corporate personae (and consequently, the cross-imposition of liability) is warranted. *See Oman International Finance Ltd. v. Hoiyong Gems Corporation*, 616 F.Supp. 351, 363–64 (D.R.I.1985).

**3.** Bound up in these contentions is the closely-related asseveration that the plaintiffs, individually and collectively, lack standing to bring this suit.

101 S.Ct. 2615, 2622–25, 69 L.Ed.2d 435 (1981); *Dalehite v. United States*, 346 U.S. 15, 30–31, 73 S.Ct. 956, 965, 97 L.Ed.2d 1427 (1953); *Rice v. Railroad Co.*, 66 U.S. (1 Black) 358, 374, 17 L.Ed. 147 (1861). The question thus becomes whether ERISA, fairly construed, grants jurisdiction to the district courts in a situation of this kind.

The plain language of ERISA itself militates against the plaintiffs' position. To be sure, 29 U.S.C. § 1132(e)(1) cedes to the district courts "exclusive jurisdiction of civil actions brought by the Secretary [of Labor] or by a participant, beneficiary or fiduciary [in or of an EBP]." But, this language fails to catalyze any rights on the part of the Funds; it would take far too many liberties with ordinary meaning to consider an EBP as being among its own participants/beneficiaries/fiduciaries.

ERISA's civil enforcement provisions deal with standing in much the same fashion. 29 U.S.C. § 1132(a)[4] provides that civil actions may be brought by the Secretary of Labor and by participants, beneficiaries, and fiduciaries of ERISA trusts to redress ERISA violations. There is nothing in § 1132(a) which betokens any congressional intent to vest ERISA-spawned rights of action in any more broadly defined classes. And, the legislative history is barren of any such indication. *See, e.g.*, H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* U.S. Code Cong. & Ad. News 4639, 5038, 5109 (1974). Where Congress has carefully catalogued a select list of persons eligible to sue in a federal forum under ERISA, it seems gratuitous—

and wrong—for the courts to override that policy judgment by expanding the array.

The Funds argue, however, that the congressional roster, no matter how precisely drawn, need not be viewed as exclusive. They find solace in *Fentron Industries, Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300 (9th Cir.1982). In *Fentron*, the Ninth Circuit held that an employer—that is, a non-participant, non-beneficiary, non-fiduciary—could sue for ERISA redress. The court of appeals found that § 1132, viewed in the albedo of its legislative history, in no way "suggest[ed] either that the list of parties empowered to sue under [§ 1132(a)] is exclusive or that Congress intentionally omitted employers." *Fentron*, 674 F.2d at 1305. *See also Michigan United Food and Commercial Workers Unions v. Baerwaldt*, 572 F.Supp. 943, 947 (E.D.Mich.1983) (permitting suit for declaratory and injunctive relief brought by health and welfare fund under color of ERISA jurisdiction to proceed).

*Fentron*, however, appears to stand logic on its head. Given the natural constraints on the scope of federal jurisdiction, *see* text *ante*, at 1459–60, the question is not whether the national legislature affirmatively intended to bar suits by employers, trust funds, and others not specifically identified in § 1132(a)'s laundry list, but whether Congress affirmatively intended that unnamed others should be permitted access to a federal forum. And, there is no cogent evidence of such an open-door policy.

This court rejects the reasoning and result of *Fentron* in favor of a stricter con-

---

**4.** Section 502 of ERISA, 29 U.S.C. § 1132(a) (1976), provides:

A civil action may be brought—

(1) by a participant or beneficiary—(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or

the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;

(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or

(6) by the Secretary to collect any civil penalty under subsection (i) of this section.

struction of the statute. Such a change in emphasis is best exemplified by the Second Circuit's opinion in *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 892–93 (2d Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). *Pressroom* limited the potential plaintiffs in an ERISA action to those groupings specified in § 1132(a). The court of appeals held that, inasmuch as the legislative history was wholly unenlightening as to the scope of § 1132, the statute should, consistent with established principles of jurisprudence, be considered as an exclusive jurisdictional grant. *Pressroom*, 700 F.2d at 892.

Such an outlook seems entirely consistent with the draftsmanship of the Act. The listing at issue is not a casually mentioned aside: it informs not only § 1132(a), but several other clauses of the statute as well. *E.g.*, 29 U.S.C. § 1132(b)(1)(B) ("participants, beneficiaries, or fiduciaries" may request the Secretary to act); *id.* at § 1132(c) ("participant or beneficiary" eligible to demand information from a plan administrator); *id.* at § 1132(e)(1) (*see* text *ante* at 1459–1460); *id.* at § 1132(g) ("participant, beneficiary, or fiduciary" may recover counsel fees); *id.* at § 1132(h) (discussing notice to be given upon the filing of an action by "a participant, beneficiary, or fiduciary"); *id.* at § 1132(k) ("administrator, fiduciary, participant or beneficiary" authorized to bring certain actions against the Secretary). In point of fact, ERISA in its totality reflects a plain congressional intention to single out "participants" and "beneficiaries" as recipients of special prophylactic protection. *E.g.*, 29 U.S.C. § 1140 (prohibition of discrimination); *id.* at § 1141 (ban on coercive interference with rights accruing under EBPs); *cf.* 29 U.S.C. § 1137(c) (interdicting certain conflicts of interest). Viewed against the backdrop of the statutory mosaic as a whole, the rea-

soning of the *Pressroom* court takes on compelling force.

Though caselaw on the point is relatively sparse, a clear majority of the reported decisions have followed the trail blazed in *Pressroom*. *E.g.*, *Tuvia Convalescent Center, Inc.*, 717 F.2d at 729–30; *Sixty-Five Security Plan v. Blue Cross and Blue Shield of Greater New York*, 583 F.Supp. 380, 383 (S.D.N.Y.1984); *Local 807 Labor-Management Pension Fund v. Owens Trucking*, 585 F.Supp. 616, 617 (E.D.N.Y.1984); *Amalgamated Industrial Union Local 44-A Health and Welfare Fund v. Webb*, 562 F.Supp. 185, 188 (N.D.Ill.1983); *Employees Savings Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138, 140 (S.D.N.Y.1983).

*Pressroom* appears to this court to be better reasoned than *Fentron*. The approach taken by the Second Circuit recognizes the inherent limitations on the exercise of federal judicial power, and is consistent with an accurate assessment of the proper interrelationship between the complementary roles of Congress and the federal judiciary in the cartography of district court jurisdiction.[5] And, as noted above, *see* text *ante*, the statute as a whole harmonizes with the emphasis on safeguarding the pension-related rights of particular classes of persons.

The plaintiffs, however, have yet another string to their ERISA bow. They point to 29 U.S.C. § 1132(d)(1), which states that "an employee benefit plan may sue or be sued under this subchapter as an entity," and assert that this proviso envisions the existence of a cause of action which a fund may bring to its own behoof. From this construction, the plaintiffs reason that federal jurisdiction necessarily exists for such suits. They conclude that this must mean that, notwithstanding the participant/beneficiary/fiduciary trilogy fashioned by § 1132(a), the opportunity for other parties to bring suit under ERISA in a federal

---

**5.** The interpretation of § 1132 favored both by the Second Circuit and by this court does not result in the creation of a right benefit of a remedy. To the extent that an EBP has been damaged by acts or omissions which ERISA interdicts, the trustees of the plan are fiduciar-

ies within the meaning of the Act, *see* 29 U.S.C. § 1002(21)(A), who enjoy unfettered access to a federal forum in order to redress ERISA violations, to enforce the terms of the EBP, and to obtain other appropriate relief. *E.g.*, 29 U.S.C. §§ 1132(a)(2), (3).

forum has not been foreclosed. Indeed, the district court in *Baerwaldt,* 572 F.Supp. at 947, though acknowledging that § 1132(d)(1) "does not confer federal jurisdiction, and does not define the type of suits which may be brought by a plaintiff plan," declared the entity clause sufficient to sanction the prosecution of a roughly analogous action in the federal courts. *Id.*[6]

But, *Pressroom* and its progeny speak to a contrary conclusion. In *Pressroom,* the Second Circuit held that the "entity" clause, 29 U.S.C. § 1132(d)(1), merely established the right of EBPs to sue and be sued like corporations and other legal entities, thereby eliminating artificial state law capacity-to-sue barriers and authorizing suits brought by funds in situations where there would properly be jurisdiction. 700 F.2d at 893. Section 1132(d)(1) did not, however, imply that EBPs may bring actions as of right in the federal district courts under ERISA. *Id.* The Second Circuit met head on the riposte that, if § 1132(d)(1) was itself an inadequate basis for permitting trust funds to file ERISA actions in federal court, then the entity clause, or at least so much thereof as allowed EBPs to sue as plaintiffs, would be a nullity: the *Pressroom* court demurred, noting, by way of illustration, that, "[i]f a fund became involved in a contract dispute, and wished to pursue a state law contract claim, § 1132(d)(1) would allow the fund to bring such an action in its own name." *Pressroom,* 700 F.2d at 893.

Once again, *Pressroom* appears to have found solid footing. Section 1132(d) is addressed in overwhelmingly large part not to EBPs *qua* plaintiffs, but to the mechanics of actions *against* EBPs. And, insofar as § 1132(d)(1) does cede to trust funds capacity to sue as entities in their own behalf, it satisfies an obvious need. Conferral of entity status on an EBP elimi-

nates an artifical impediment to the prosecution of actions by such a fund, *cf. Carpenters & Millwrights Health Benefit Trust Fund v. Domestic Insulation Company,* 387 F.Supp. 144, 147 (D.Colo.1975) ("trusts themselves are not legal entities with capacity to sue ..."), and thereby enhances an important purpose of ERISA: furtherance of the stability and integrity of EBPs.

This result is fortified by recognition of the goals of ERISA. Evidence before Congress indicated two chief abuses which the new law was designed to correct: mismanagement of funds accumulated to finance pension benefits and failure to deliver to employees the pension benefits promised. *See, e.g.,* 120 Cong.Rec. 4279–80 (1974) (statement of Rep. Brademas), *reprinted in* 2 *Legislative History* of the Employee Retirement Income Security Act of 1974 ("*Leg. Hist.*") 3372–74 (Comm.Print 1976); 120 Cong.Rec. 4277–78 (1974) (statement of Rep.Perkins), *reprinted in* 2 *Leg. Hist.* 1598–1600; *see also Private Welfare and Pension Plan Legislation: Hearings on H.R., 1045. H.R. 1046, and H.R. 16462 Before the General Subcommittee on Labor of the House Committee on Education and Labor,* 91st Cong., 1st and 2d Sess. 464, 470–72 (1970) (statement of George Shultz, Secretary of Labor). Ceding to an EBP, in its own right, direct access to a federal forum is not indispensable to the attainment of either of these goals; both objectives are satisfactorily met by conferring rights of action upon the Secretary and upon participants, beneficiaries, and fiduciaries, in conjunction with the extension of entity status to EBPs. In sum, the plaintiffs' action, insofar as it seeks to invoke ERISA jurisdiction or to bestow upon the Funds rights not expressly granted to them under ERISA, must fail.[7]

---

**6.** It should be noted that Judge Feikens's comments in *Baerwaldt* are *obiter dicta.* After oral argument in that case, but before the court's decision was handed down, the trustees of the plans were added as parties plaintiff. *Baerwaldt,* 572 F.Supp. at 947 n. 6. Joinder of the trustees mooted the jurisdictional question. And, though *Baerwaldt* was decided some two months after *Pressroom,* it seems likely that the

*Baerwaldt* court was wholly unaware of the Second Circuit's opinion; at the least, it is clear that Judge Feikens did not cite to *Pressroom.*

**7.** Inasmuch as the plaintiffs have not claimed subject matter jurisdiction under 28 U.S.C. § 1331 in their complaint or in their opposition to the motions to dismiss, this court declines to express any views as to the possible relevance of

The Funds' macromaniacal desire to bloat § 1132(a) to such an extent that it takes on a shape far larger than Congress intended cannot be justified. Though they strain in order to fashion a sweep for § 1132(a) beyond what Congress has explicitly decreed, they perforce labor in vain.

## B. *LMRA Jurisdiction*

■ Given the amalgamation of causes of action contained in the complaint, *see* text *ante* at Part I, the absence of ERISA jurisdiction does not ring down the final curtain. The plaintiffs simultaneously postulate the existence of jurisdiction under the LMRA, 29 U.S.C. §§ 185(a)–(c),[8] and it is clear as a general proposition that federal courts possess LMRA-derived jurisdiction over suits brought to enforce the covenants of a collective bargaining agreement. It has recently been made equally plain that such an action may be prosecuted by either the Union or the EBPs, notwithstanding the admitted fact that none of the plans are signatory to the Agreement; § 301(a), 29 U.S.C. § 185(a), affords a federal forum to redress all violations of contracts of the type and kind described in the statute, including pension and welfare fund agreements. *Schneider Moving and Storage Company v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 1846 n. 2, 80 L.Ed.2d 366 (1984). And, *Schneider Moving* laid to rest the shibboleth that only parties to a collective bargaining agreement could sue thereon; the *Schneider* Court explicitly permitted trustees of EBPs, non-signatories to the collective bargaining agreement there in issue, to prosecute a civil action under the LMRA. *Id.* 104 S.Ct. at 1846–47. *See also Smith v. Evening News Association*, 371 U.S. 195, 200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) (§ 301 manifests a "congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law," thereby permitting an individual employee to sue under § 301 to vindicate rights arising from such a contract); *Nedd v. United Mine Workers of America*, 556 F.2d 190, 197 (3d Cir.1977) (suit by non-party trustees in federal district court to enforce provisions of collective bargaining agreement permissible by virtue of § 301 of LMRA).

The EBPs themselves, therefore, although not parties to the Agreement between the Union and Menard, have properly invoked this court's LMRA jurisdiction in their effort to palliate a claimed breach of the Agreement which has redounded to their detriment. And, the Union's entitlement to this federal forum is beyond cavil: it is (i) a party to the Agreement, which (ii) contains a promise by the employer to effectuate retainages and remittances in respect to Union dues, which (iii) the Union has yet to receive. This sort of claim is undeniably actionable under § 301. *E.g., United Mine Workers of America, District 22 v. Roncco*, 314 F.2d 186, 187 (10th

---

that statute. *See Pressroom*, 700 F.2d at 892 n. 7.

**8.** Section 301 of the LMRA, 29 U.S.C. § 185(a)–(c) (1947), provides:

    (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

    (b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

    (c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

Cir.1963) (an "alleged failure to check off dues ... is a matter of direct and peculiar concern to the [union] as an organization, "and is thus within the district court's § 301 jurisdiction"); *United Steelworkers of America v. Pullman-Standard Car Manufacturing Co.,* 241 F.2d 547, 551 (3d Cir. 1957) (same).

The defendants assert, however, that neither the Funds nor the Union are the real parties in interest, *see* Fed.R.Civ.P. 17(a), and, in a similar vein, that the plaintiffs lack standing to prosecute the LMRA claims. The core element of the defense contentions is that the respective trustees of the Funds—and the trustees alone—can be considered the proper parties to such an action.[9] These remonstrances are singularly unpersuasive.

As noted previously, *see* text *ante* at Part III(A), 29 U.S.C. § 1132(d)(1) contemplates situations in which EBPs may sue or be sued in non-ERISA actions by bestowing entity status upon them. The *Pressroom* court provided one example of the utility of this grant, noting that the clause would permit an EBP to pursue a state law contract action in its own name. *Pressroom,* 700 F.2d at 893. But, § 1132(d)(1) did more than recognize that an EBP should be able to pursue potential state law choses in action. The statute legitimized the prosecution of any claim for relief by an EBP so long as an independent jurisdictional basis for the suit was extant. There is nothing in the language of § 1132(d)(1) which debars an EBP from suing in a federal court to enforce a plan sponsor's obligations to make contributions if, say, the requirements of the diversity statute, 28 U.S.C. § 1332, are met. Though federal court jurisdiction cannot be hung on the ERISA hook under § 1132(a) if an action is brought other than by the Secretary or one credentialled as within the participant/beneficiary/fiduciary triad, entity status is nevertheless conferred by § 1132(d)(1), and access to the district court is available to a trust fund if some distinct basis for jurisdiction—apart from § 1132(a)—exists. So here: § 301 of the LMRA, 29 U.S.C. § 185, satisfied the Funds' need for an invitation to enter the federal courts.

In effect, where the forum court's underlying jurisdiction is properly laid outside of ERISA,[10] § 1132(d)(1) negates any meaningful argument as to standing or real party in interest vis-a-vis suits brought by and in the name(s) of EBPs. In this fashion, the will of the Congress is deftly implemented: EBPs, though denied automatic entry into a federal forum, are no longer at the mercy of a bewildering variety of state laws which impinge upon their ability to enforce their rights in some (otherwise appropriate) venue.

An excellent illustration of precisely the sort of technical defense which § 1132(d)(1) undermines is to be found in perscrutation of the defendants' flagship authority for the proposition that the trustees of an EBP are indispensable parties in an LMRA action, viz., *Warshaw v. Local No. 415, International Ladies' Garment Workers' Union,* 325 F.2d 143 (5th Cir.1963). *Warshaw,* a decision which antedates both the enactment of ERISA and the Court's pronouncements in *Schneider Moving,* held that a health and welfare fund's suit against a delinquent employer could not proceed in its own name, absent joinder by the plan trustees as parties plaintiff. *Id.* at 144–145. Section 1132(d)(1) eliminates an EBP's dependence on the whims of its fiduciaries, and permits it to sue in its own

9. In formulating this line of attack, the defendants conveniently overlook the dues check-off claim which the complaint unmistakably asserts. *E.g.,* Plaintiffs' Complaint at ¶¶ 13, 14. This is a claim uniquely maintainable by the Union.

10. Although not mentioned by the Second Circuit in *Pressroom,* the capacity-to-sue provision in § 1132(d)(1) may also have some application in ERISA actions per se. If, say, a participant elects to file suit in the district court as allowed by § 1132(a), the affected EBP could presumably join—or intervene—as a party plaintiff without divesting the court of jurisdiction. Because of the prophylaxis which § 1132(d)(1) supplies, such joinder—or intervention—would not be susceptible to assault on capacity-to-sue or standing grounds, notwithstanding the disinclination of the fund's fiduciaries to join in the fray.

stead whenever it has been harmed by the actionable misconduct of another. But an EBP, like any other suitor, is not thereby relieved of identifying a usable hook upon which subject matter jurisdiction can be fastened.

For these reasons, the plaintiffs' claim of entitlement to LMRA jurisdiction is well founded.[11]

## IV.

The motions to dismiss are sustained insofar as they question this court's ERISA-based jurisdiction, and are overruled insofar as they question the court's LMRA-based jurisdiction. They are also denied to the extent that they challenge the Funds' capacity to sue. (The Funds are, as to their LMRA initiative, the real parties in interest.)

The plaintiffs shall, within fifteen days from the date hereof, serve their first amended complaint, limited to their respective statements of claim cognizable under § 301.[12] The defendants shall have fifteen days thereafter to answer or otherwise respond thereto.

*So ordered.*

---

**11.** A § 301 initiative must satisfy three requirements: there must be (i) a violation of (ii) a collective bargaining contract (iii) between an employer and a labor organization. *E.g., Alvares v. Erickson,* 514 F.2d 156, 161 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). The plaintiffs concede that defendant Nunes did not sign the Agreement here at issue. Nonetheless, the plaintiffs argue that a § 301 claim properly lies agaisnt Nunes on their "alter ego" theory, *see* n. 2 *ante.* Existing case authorities are divided as to the appropriateness of a § 301 action against an alleged alter ego. *Compare Wilkes-Barre Publishing Co. v. Newspaper Guild Local 120,* 647 F.2d 372, 380 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) (section 301

reaches not only suits on labor contracts, but suits seeking remedies for violation of such contracts) *with Aacon Contracting Co. v. Association of Catholic Trade Unionists,* 276 F.2d 958 (2d Cir.1960), *aff'g and adopting* 178 F.Supp. 129, 130 (E.D.N.Y.1959) (contractual relationship required between parties in § 301 action). But, inasmuch as Nunes does not raise this issue in its motion to dismiss, this court can safely leave resolution of the conundrum to another day.

**12.** By reason of the foregoing, the Funds' ERISA-gaited prayers for liquidated damages, 29 U.S.C. § 1132(g)(2), and for counsel fees, 29 U.S.C. § 1132(g)(1), are not cognizable in this action.