**GASTRONOMICAL WORKERS UN-ION LOCAL 610 & Metropolitan Hotel, et al., Plaintiffs,**

v.

**DORADO BEACH HOTEL CORPORA-TION d/b/a Hyatt Dorado Beach Resort & Country Club, et al., Defendants.**

**Civil No. 06–1346 (JAF).**

United States District Court,
D. Puerto Rico.

March 2, 2007.

Jose G. Barea–Fernandez, Gonzalez–Nieto, Garcia & Balzac Law Office, San Juan, PR, PHV Allison A. Madan, PHV Jeffrey S. Swyers, PHV Marilyn M. Cochran, Slevin & Hart, Washington, DC, for Plaintiffs.

Jose R. Gonzalez–Nogueras, Jimenez, Graffam & Lausell, Lourdes Marie Rodriguez–Morera, Amelia Fortuno–Ruiz, Martinez Odell & Calabria, Carmencita Velazquez–Marquez, Cancio, Nadal, Rivera & Diaz, Edwin J. Seda–Fernandez, Mariel Y. Haack–Pizarro, Adsuar, Muniz, Goyco & Besosa PSC, Manuel Duran–Rodriguez, Manuel Duran Law Office, San Juan, PR, Lillian Frattallone–Marti, Rivera Tulla & Ferrer, Hato Rey, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, the Gastronomical Workers Union Local 610 and Metropolitan Hotel Association Pension Fund (the "Pension Fund") and its trustees, Rebecca Morales, Héctor Otero Jiménez, Edgar Romney, David Cardona, María Victoria Fernández, and Dora Soler (the "Trustees"), bring this action against Defendants, Dorado Beach Hotel Corporation ("Hyatt Dorado Beach Resort"), Hilton International of Puerto Rico, Inc. ("Caribe Hilton Hotel"), Hospital del Maestro Association, Inc. ("Hospital del Maestro"), Posadas de Puerto Rico Associates, Inc. ("Wyndham Condado Plaza Hotel"), Axtmayer Enterprises, Inc. ("Hotel Excelsior"), La Mallorquina, Inc. ("La Mallorquina"), Olimpo Court, Inc. ("Olimpo Court Hotel"), M. Pavía Fernández, Inc. ("Hospital Pavía"), Hospital Pavía Santurce, Inc. ("Hospital Pavía Santurce"), Club Deportivo de Ponce, Inc. ("Club Deportivo"), and Pulsar of Puerto Rico, Inc. ("Diamond Palace Hotel"), alleging that Defendants have violated § 302 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1082, by failing to sufficiently fund the Pension Fund. *Docket Document No. 1.* ERISA establishes minimum funding requirements for employee benefit plans that are covered by its provisions.

Defendants jointly file this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for summary judgment pursuant to Rule 56 of the same rules. *Docket Document No. 31.* Plaintiffs oppose, *Docket Document No. 33,* and Defendants have filed piecemeal replies. *Docket Document Nos. 47, 49, 50, 54, 55, 56, 57.*

### I.

### *Factual and Procedural Synopsis*

The following facts are based on Defendants' and Plaintiffs' statements of uncontested material facts, which they have filed pursuant to Local Rules 56(b) and 56(c). *Docket Document Nos. 31–2, 38;* Local Rule 56(b)("A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried."); Local Rule 56(c) ("A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny, or qualify the facts by reference to each paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs....").[1]

---

1. 'Plaintiffs' Opposing Statement of Material Facts, which responds to Defendants' Statement of Material Facts under Local Rule 56(c), is extremely confusing because in it, Plaintiffs say such things as "Defendants' [sic] admit paragraph 1 of Defendants' Statement of Material Facts." *Docket Document No. 38.* When Plaintiffs use such confusing language, which they do all throughout this document, we take them to mean that they (and not Defendants) are admitting the corresponding

The Pension Fund, which is a multi-employer employee benefit plan, was created by the terms of a series of collective bargaining agreements ("CBAs") Defendants have entered into with their workers' union ("Local 610"). Defendants have agreed, through these CBAs, to make regular contributions to the Pension Fund, which, in turn, uses the money to provide retirement benefits to Defendants' eligible employees.

Defendants and Local 610 entered into the first such CBA on November 15, 1971 (the "1971 Trust Agreement"). *Docket Document No. 31–5.* Defendants and Local 610 later amended the 1971 Trust Agreement, and the amendments took effect on June 1, 1976("1976 Amended Trust Agreement"). *Docket Document No. 31–6.* Defendants and Local 610 amended the 1976 Amended Trust Agreement one last time, on April 1, 2004 ("1994 Amended Trust Agreement"). *Docket Document No. 31–7.*

All three of the aforementioned CBAs indicated in some way that the parties considered the Pension Fund a trust. Article II of both the 1971 Trust Agreement and the 1976 Amended Trust Agreement, for example, called the Pension Fund "an irrevocable trust created pursuant to the provisions of Section 302(c) of the Labor Management Relations Act of 1947." *Docket Document Nos. 31–5, 31–6.* The 1994 Amended Trust Agreement eliminated that language but still defined the assets of the Pension Fund to be a trust. *Docket Document No. 31–7.*

All three CBAs identified Puerto Rico as the situs of the Pension Fund and stated that all questions relating to its validity, construction, and administration would be determined in accordance with the laws of Puerto Rico and any applicable federal legislation. None of the three CBAs were executed as public deeds.[2]

## A. The First Litigation

On February 22, 2005, some of the Plaintiffs in the instant case—the Pension Fund, Morales, Otero-Jiménez, Cardona, and Victoria Fernández[3]—filed a complaint in this district against Hospital Pavía Santurce—one of the Defendants in the instant case—seeking monetary and injunctive relief for Hospital Pavía Santurce's alleged failure to make adequate contributions to the Pension Fund from August 2001 through May 2003 ("the first litigation"). *Civ. No. 05–1206, Docket Document No. 1.*

The case was assigned to Judge Jaime Pieras, Jr., and on June 23, 2006, Hospital Pavía Santurce moved to dismiss the lawsuit, arguing that the Pension Fund was not a legal entity with standing to sue because it had been created by private agreement, and not public deed as Puerto Rico law required of valid trusts. *Civ. No. 05–1206, Docket Document No. 35.* Hospital Pavía Santurce alleged that its argument, if taken to its logical conclusion, meant that the Pension Fund's trustees were not actual trustees and, therefore, did not have standing to sue, either. *Id.*

---

paragraph in Defendants' Statement of Material Facts.

2. Defendants allege that none of the three aforementioned CBAs were executed as public deeds. Plaintiffs refuse to admit this, but given that they have not submitted any evidence to the contrary, we shall proceed under the assumption that none of the CBAs were executed as public deeds. Rule 56(c)("The

opposing party shall admit, deny, or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation....").

3. Romney and Soler were not parties to the first litigation.

On July 17, 2006, Judge Pieras agreed that the Pension Fund did not appear to be an *intervivos* trust established under Puerto Rico law, and dismissed the Pension Fund from the action for lack of standing. *Civ. No. 05–1206, Docket Document No. 40.* Judge Pieras ruled that the Pension Fund's trustees did have standing, however. *Id.* He noted that the Pension Fund was plainly a valid and enforceable employee benefit plan, and concluded that the trustees—its fiduciaries—therefore had standing to bring an action on the Pension Fund's behalf for the purposes of ERISA law. *Id.*

The parties to the first litigation reached a settlement agreement, and Judge Pieras dismissed the action on August 9, 2006. *Civ. No. 05–1206, Docket Document No. 47–1.*

## B. *The Instant Litigation*

On May 19, 2005, the Pension Fund sent a letter to Defendants stating that their contributions were insufficient under ERISA's minimum statutory funding requirements, and informing them that the contribution each was obligated to pay would, therefore, increase effective June 1, 2005, to $100 per month per covered employee (the increase in the contribution rate, *i.e.*, the difference between $100 and the contribution rate described under the CBAs, is hereinafter referred to as the "Supplemental Payment").

Defendants did not begin making the Supplemental Payment on June 1, 2005, and as of February 28, 2006, still had not begun making it. On March 31, 2006, Plaintiffs filed this complaint asking this court, inter alia, to order Defendants to pay all delinquent Supplemental Payments and all Supplemental Payments that they will owe in the future under § 302 of ERISA, 29 U.S.C. § 1182. *Docket Document No. 1.* Plaintiffs invoked § 502 of ERISA, 29 U.S.C. §§ 1132(a)(3)(A), (B),

and § 515 of ERISA, 29 U.S.C. § 1145, as the statutes under which they are empowered to bring this suit. *Id.* On June 30, 2006, Defendants jointly filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Docket Document No. 31.* On July 10, 2006, Plaintiffs opposed, *Docket Document No. 37,* and from September 20, 2006, until September 29, 2006, Defendants filed a smattering of replies. *Docket Document Nos. 47, 49, 50, 54, 55, 56, 57.*

## II.

### *Standards*

### A. *Standard for 12(b)(6) Motion to Dismiss*

■ Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "we accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." *Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 62 (1st Cir.2004) (citing *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998)); *see also Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). We then determine whether the plaintiff has stated a claim under which relief can be granted.

■ We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Morales–Villalobos v. Garcia–Llorens,* 316 F.3d 51, 52–53 (1st Cir.2003); *DM Research, Inc. v. Coll. of Am. Pathologists,*

170 F.3d 53, 55–56 (1st Cir.1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and need only give the respondent fair notice of the nature of the claim and petitioner's basis for it. *Swierkiewicz*, 534 U.S. at 512–15, 122 S.Ct. 992. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514, 122 S.Ct. 992 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**B. Standard for 56(c) Motion for Summary Judgment**

■ The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* at 331, 106 S.Ct. 2548.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### Analysis

**A. Motion to Dismiss**

Plaintiffs do not dispute that Defendants have made all fixed contributions required of them under the explicit terms of the CBAs at issue in this litigation. According to Plaintiffs, however, Defendants must make Supplemental Payments to the Pension Fund in order to meet ERISA's minimum funding requirements because the Pension Fund is currently underfunded. *Docket Document No. 1.*

The parties do not dispute that the Pension Fund is an employee benefit plan subject to ERISA law.[4] 29 U.S.C. § 1003(a)(stating requirements for an employee benefit plan to be subject to ERISA); 29 U.S.C. § 1002(1) (defining

---

4. Defendants refer to the Pension Fund as an employee benefit plan in their Statement of Facts. We recognize that this does not necessarily mean that they concede that it is an employee benefit plan under ERISA, but that is precisely how Plaintiffs' opposition to De-

fendants' summary judgment motion took Defendants to mean, *Docket Document No. 37,* and Defendants did not refute Plaintiffs' assertion in their replies. *Docket Document Nos. 47–1, 47–2, 47–3, 48, 49, 50, 56.*

employee benefit plan). Section 302 of ERISA sets minimum funding requirements for employee benefit plans, explaining that a plan satisfies the minimum funding standard for a plan year if—"in the case of a multiemployer plan, the employers make contributions to or under the plan for any plan year which, in the aggregate, are sufficient to ensure that the plan does not have an accumulated funding deficiency . . . as of the end of the plan year." 29 U.S.C. § 1082(A)(2)(c). "[T]he amount of any contribution required [by minimum funding standards] . . . shall be paid by the employer responsible for making contributions to or under the plan." 29 U.S.C. § 1082(b)(1).[5] "If the employer . . . is a member of a controlled group, each member of such group shall be jointly and severally liable for payment of such contributions." 29 U.S.C. § 1082(b)(2).

In passing ERISA's minimum funding requirements, Congress sought to protect employees from the inequity of underfunded employee benefit plans that cannot deliver on promises made. *S.Rep. No. 93–127*, at 4846 (1974)(A "major issue in private pension plans relates to the adequacy of plan funding. . . . The Promise and commitment of a pension can be fulfilled only when funds are available to pay the employee participant what is owed to him. Without adequate funding, a promise of a pension which may be illusory and empty."). Any number of unforeseeable incidents—business failures and reorganizations, for instance—can compromise an employee benefit plan's ability to pay its

beneficiaries, and so ERISA's minimum funding standards work to keep employee benefit plans' funding adequate and up-to-date at all times. *Id.* at 4857 ("If employers never went out of business or terminated pension plans before they were completely funded, there would, no doubt, be no persuasive justification for funding standards. . . . Nevertheless, employers do experience financial or economic difficulties or they undergo varying degrees of corporate reorganization, all of which can lead to premature termination of underfunded plans. A plan termination insurance program provides the essential safeguard to the rights of workers who are trapped by these unforeseen economic hazards but such a program cannot be made practical without being coupled to required standards of funding.").

■ Despite ERISA's minimum funding requirements and their well—documented justifications, Defendants nonetheless insist that they are exempt from them because their CBAs with Local 610 only bind them to pay fixed contributions to the Pension Fund, however insufficient those fixed contributions prove to be. *Docket Document No. 31–8.* Defendants offer further support for their argument that the CBAs' terms cannot be modified by pointing to language from the 1994 Amended Trust Agreement explicitly addressing the issue, stating that the Trustees may not modify Defendants' contributions beyond what is established by its terms.[6] *Id.*

5. We observe that Plaintiffs cited to this statute as 29 U.S.C. § 1082(c)(11)(A), which does not exist.

6. The provision in question from the 1994 Amended Trust Agreement states that:

The Contributions of the Employers shall be made in the amounts set forth in the Collective Bargaining Agreements and any amendments thereto, which may be presently in existence, or which may be hereafter made by and between the Union and the Employers. The Union's or Fund's Contributions, if any, for its employees shall be in the amount agreed to in the Participation Agreement signed by it. The Contributions by the Employers shall be made in accordance with this Agreement and the Pension Plan, and any rules or regulations promulgated by the Board of Trustees in connection therewith. The Employer shall be notified as to all matters pertaining to the

We disagree with Defendants' position. Perhaps it is true that the CBAs' language would prohibit Plaintiffs from unilaterally demanding that Defendants begin making contributions to the Pension Fund in amounts that *exceed* federally-mandated minimums, but that is not happening here. *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. UAW v. Keystone Consol. Indus., Inc.,* 793 F.2d 810, 814 (7th Cir.1986)(observing that parties can collectively bargain for obligations greater than, and separate from, ERISA minimum funding obligations). Instead, Plaintiffs are asking the court to order Defendants to begin making contributions to the Pension Fund in amounts that *meet* federally-mandated minimums. This dispute is therefore not about the Defendants' obligations under the CBAs at all; it is about Defendants' obligations under ERISA, which clearly states that Defendants must adequately fund the Pension Fund they have agreed to sponsor. *See In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey,* 160 B.R. 882, 888 (Bankr.S.D.N.Y. 1993)(ERISA "mandate[s] that every employer maintaining a qualified benefit plan provide minimum funding contributions. Each plan sponsor must establish and maintain a ledger account, known as a funding standard account, containing funds sufficient to satisfy the minimum funding standard. A plan satisfies the minimum funding requirements if, as of the end of plan year, the plan does not have an accumulated funding deficiency.") (citations omitted); *Am. Commc'n Ass'n, Local 10 I.B.T. v. Ret. Plan for Employees of RCA Corp. and Subsidiary Co., RCA,* 488 F.Supp. 479, 482 (S.D.N.Y.1980)("Section

302 of the Act requires, in essence, that an employer's annual contributions to a defined benefit plan meet the current annual cost (determined under an approved actuarial method) of future pension benefits and administrative expenses....").

Defendants suggest that § 515 of ERISA explicitly permits them to rely on the terms of their CBAs to limit their contributions liability despite minimum funding requirements. *Docket Document No. 31–8.* Section 515 states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The cases that Defendants cite, however, clearly reveal that § 515 is actually inapposite to the present dispute.

In *Central Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc. ("Central Pennsylvania Teamsters"),* a pension fund sued an employer for failing to make the level of contributions it had promised to do under the terms of a CBA. 85 F.3d 1098, 1103 (3d Cir.1996). The employer argued that it was justified in its refusal to pay because the parties to the CBA had made a mutual mistake in drafting it. *Id.*

The Third Circuit held that the employer was barred from making a contract defense in response to the pension fund's collection action, explaining that Congress' purpose in enacting § 515 was to allow multiemployer plans to "rely upon the

---

payment of the Contributions due, including the date on which the Contributions are due, the person or place to deliver said Contributions, together with any forms or reports required in connection therewith. However, nothing in the Agreement shall

empower the Trustees to vary a Collective Bargaining Agreement, including but not limited to the timing, amount, or basis of contributions to this Pension Fund.
*Docket Document No. 31–8* (citing *Docket Document No. 31–7* ).

terms of collective bargaining agreements and plans as written, thus permit[ting] trustees of plans to recover delinquent contributions efficaciously." *Id.* (quotation omitted). The *Central Pennsylvania Teamsters* court pointed out that Congress believed that multiemployer plans seeking to enforce the terms of a CBA deserved to be insulated from litigating contract defenses because, firstly, as third-party beneficiaries to the CBA, they "are not participants in collective bargaining agreement negotiations and typically have no knowledge of the nature of the original dealings between the union and the employer." *Id.* Secondly, and more importantly, Congress meant for § 515 to preserve multiemployer plan assets from being spent on financially risky litigations that, if unsuccessful, would leave them more depleted than in their already underfunded pre-litigation state. *Id.; see also Bakery and Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Company,* 118 F.3d 1018, 1021(4th Cir.1997)(observing Congress' acknowledgment that "collection actions by multiemployer plans often were complicated by issues that had arisen between the employer and the local union but were unrelated to the employer's. obligation to the plan" and that "[i]njecting these tangential issues into collection actions consumed plan resources by increasing the cost and delay involved in litigation ... And, in cases in which the employer's defense was successful, the plan was left without contributions it had been promised and had expected 8 . . . .").

■ In sum, it is plain that § 515 was meant to strengthen the ability of multiemployer plans to recover delinquent contributions already promised to them "by holding employers and unions to the literal terms of their written commitments." *Id.* This is quite different than Defendants' argument that § 515 strengthens the ability of employers to avoid compliance with ERISA's minimum funding requirements by pointing to the literal terms of their written commitments and we therefore refuse to apply § 515 in this manner. One of the chief policies behind § 515—the preservation of a pension fund's resources for its beneficiaries—would be plainly thwarted if the statute were applied in the present case, where it is the adequate funding of a pension fund that Plaintiffs seek. Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim is denied.[7]

### B. *Summary Judgment*

Defendants' motion for summary judgment argues that Pension Fund and its Trustees do not have standing to file this lawsuit. *Docket Document No. 31–8.* Defendants argue that the Pension Fund does not have standing to sue because it was created by private agreements, and not a public deed as is required by Puerto Rico law governing trusts. *Id.* Defendants further argue that if the Pension Fund is not truly a trust, then neither are its Trustees truly trustees, and they therefore also lack the standing necessary to bring this lawsuit. *Id.*

■ We agree with Defendants that the Pension Fund does not have standing to sue under ERISA, and so the Pension Fund is dismissed from this case. We reach this decision for the simple reason

---

7. Although we have just held that § 515 is not grounds to dismiss Plaintiffs' complaint seeking Supplemental Payments for failure to state a claim, we must also clarify, given everything that·we have just discussed about § 515.'s purpose, that neither is it the statute upon which Plaintiffs' standing in this case may be founded. To the extent that Plaintiffs have suggested that it is, we disagree, which leaves open the issue of whether or not Plaintiffs have standing under the *other* statute that they cite in this regard—Section 502 of ERISA. We· reach ·that analysis in Section III.B.

that there is no authority that bestows standing upon *any* employee benefit plan, regardless of its qualification as a trust under local law, to file a civil action to enforce ERISA. 29 U.S.C. § 1132. Section 502 of ERISA, which lists who is a potential plaintiff in most ERISA civil actions, does not include employee benefit plans among those with standing. *Id.* Plan participants, plan beneficiaries, plan fiduciaries, and the Department of Labor, by contrast, are explicitly granted standing. *Id.; see also Norton Co. v. John Hancock Mut. Life Ins. Co.*, No. 87–0136, 1992 WL 237410, *4, 1992 U.S.Dist. LEXIS 14386, at *9 (D.Mass. Sept. 14, 1992)(dismissing employee benefit plans as plaintiffs to a suit because they "[did] not fit any of the four categories set forth in § 1132" and therefore did not have standing to file an ERISA action); *Int'l Union of Bricklayers v. Menard & Co.*, 619 F.Supp. 1457, 1459–62 (D.R.I.1985)(stating that plans are not granted standing to sue under ERISA under § 1132(a) because plans are not themselves beneficiaries, participants, or fiduciaries).

 The Pension Fund now dismissed from this lawsuit, we turn to the question of whether the Trustees have standing. The first of Plaintiffs' arguments in this regard is that Defendants are collaterally estopped from challenging the Trustees' standing because Judge Pieras already ruled that they had standing in the first litigation. Other than flip mention of the words "collateral estoppel," however, Plaintiffs develop no legal argument as to any of this doctrine's requirements despite the fact that it is their burden to do so. *Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 51 (1st Cir. 1997)("When the parties in a subsequent action are the same as those in a prior one, a party seeking to invoke the doctrine of issue preclusion needs to establish four essential elements: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment."). We, therefore, refuse to consider whether Defendants are collaterally estopped from what Plaintiffs claim is a relitigation of the Trustees' standing.[8]

Plaintiffs' second argument as to the Trustees' standing is that they are plan fiduciaries under ERISA and are therefore authorized to file certain civil lawsuits under that statute regardless of the Pension Fund's existence as a trust under Puerto Rico law. *Docket Document No. 37.* We agree with Plaintiffs' argument, with some qualification.

An action by a fiduciary to enforce the provisions of ERISA is an action specifically recognized and permitted under ERISA, which empowers fiduciaries of an ERISA plan to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...." 29 U.S.C. § 1132(a)(3); *see also Am. Commc'n Ass'n, Local 10 I.B.T.*, 488 F.Supp. at 482(observing that failure to satisfy the minimum funding standards can subject an employer to civil liability under ERISA).

---

**8.** Had Plaintiffs bothered to invoke collateral estoppel properly, one issue they would obviously have had to address is the fact that ten of the eleven Defendants in the present case were not parties to the first litigation and therefore arguably did not have a full and fair opportunity to litigate the issue of the Trustees' standing.

ERISA law requires that employee benefit plans, which are established and maintained by written instruments such as the 1971 Trust Agreement, the 1976 Amended Trust Agreement, and the 1994 Amended Trust Agreement, "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Article III of the 1994 Amended Trust Agreement, the most recent of the trust agreements, complies with this ERISA requirement, and names five fiduciaries, four of whom are Plaintiffs to this litigation: Morales, Otero Jiménez, Cardona, and Fernández. *Docket Document No. 31–7.* We, therefore, hold that Morales, Otero Jiménez, Cardona, and Fernández, as properly designated Pension Fund fiduciaries under ERISA, have standing to bring this lawsuit under § 502 of that law. 29 U.S.C. § 1132(a)(3).

We are confused, however, as to why Romney and Soler, who are not listed as fiduciaries to the Pension Fund by the 1994 Amended Trust Agreement, or any of the two earlier trust agreements, are included as Plaintiffs to this litigation. Because Plaintiffs have failed to explain Romney and Soler's inclusion as parties to this litigation despite their absence as named Pension Fund fiduciaries in any of the three CBAs, we dismiss them from the complaint.

## IV.

### *Conclusion*

For the aforementioned reasons, we hereby (1) **DENY** Defendants' 12(b)(6) motion to dismiss Plaintiffs' complaint in its entirety, (2) **DENY** that portion of Defendants' 56(c) motion for summary judgment alleging that Morales, Otero Jiménez, Cardona, and Fernández do not have standing as Pension Fund fiduciaries to bring this action, and (3) **GRANT** that portion of Defendants' 56(c) motion seeking the dismissal of the Pension Fund, Romney, and Soler as Plaintiffs to this action for lack of standing.

**IT IS SO ORDERED.**