# United States Court of Appeals
## For the First Circuit

No. 03-1712

EUROMODAS, INC.,
Plaintiff, Appellant,

v.

ZANELLA, LTD. AND CLUBMAN, INC.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Armando Llorens, with whom Dora Peñagarícano and McConnell Valdés were on brief, for appellant.
José L. Barreto-Rampolla, with whom Rivera, Barreto & Torres Marcano was on brief, for appellee Clubman, Inc.
Edna Hernández-Arroyo, with whom María Luísa Martínez-López, Avila, Martínez & Hernández, PSC, Lawrence Fechner, and Jaffe, Segal & Ross were on brief, for appellee Zanella, Ltd.

May 17, 2004

**SELYA**, <u>Circuit Judge</u>.  This antitrust case, which requires us to clarify what sort of evidence a plaintiff must adduce to make out a trialworthy claim for a vertical restraint of trade, presents a question of first impression in this circuit.  We turn to this question mindful that vertical restraints have "provoked more reconsideration of established rules, or more disagreement between courts and commentators" than most other areas of antitrust law.  Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and Its Practice § 11.1, at 441 (2d ed. 1999).

# I

We begin with the cast of characters.  Plaintiff-appellant Euromodas, Inc. is a corporation engaged in the retail sale of men's clothing.  Defendant-appellee Clubman, Inc. is engaged in the same business.  The two retailers are direct competitors in San Juan, Puerto Rico.  Defendant-appellee Zanella, Ltd. is an Italian manufacturer of fine men's clothing.  Until 1997, both Euromodas and Clubman sold Zanella trousers.  What happened thereafter propelled the parties from the marketplace to the federal courthouse.

Euromodas alleges that Clubman, which operates a large number of stores in Puerto Rico, used its market power to force Zanella into a minimum resale price maintenance scheme.  Euromodas claims that this scheme was in part intended to — and did —

restrict its access to Zanella pants.  Because this appeal arises in an unusual posture, see infra Part II, we defer further development of the background facts until we reach the merits of the antitrust claim.

For the nonce, it suffices to say that Euromodas, endeavoring to regain its competitive footing, sued both Clubman and Zanella in the federal district court.  It alleged a violation of section 1 of the Sherman Act, 15 U.S.C. § 1.  After pretrial discovery had been completed, all three parties moved for summary judgment.  The district court granted the defendants' motion and denied the plaintiff's cross-motion.  Euromodas, Inc. v. Zanella, Ltd., 253 F. Supp. 2d 201 (D.P.R. 2003).

The district court's decision comprised three discrete but interdependent rulings.  Initially, the court determined that the plaintiff — Euromodas — had not complied with local procedural rules.  Id. at 203-04.  This determination shaped the court's conception of which parts of the record could be considered on summary judgment.  Viewing the case through that prism, the court ruled that the plaintiff had not adduced sufficient evidence of concerted action to fix prices and, thus, had failed to make out an antitrust violation.  Id. at 205-06.  Along the way, the court denied the plaintiff's cross-motion for summary judgment on the ground that it did not comply with the court's local rules.  Id. at 204 n.5 (discussing D.P.R.R. 311.12).

This appeal followed. In it, the plaintiff (i) challenges the district court's resolution of the procedural issue; (ii) assigns error to the court's entry of summary judgment for the defendants; and (iii) protests the denial of its cross-motion for brevis disposition.

## II

Our logical starting point is the procedural issue, for its resolution will determine what facts properly comprised the summary judgment record and, thus, what facts the lower court should have considered in deciding whether to grant summary judgment. This inquiry centers on D.P.R.R. 311.12.[1] The District of Puerto Rico promulgated that rule to aid in the task of identifying genuine issues of material fact that might affect the entry of summary judgment. See, e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).

The local rule imposes bilateral obligations. It requires that a party who moves for summary judgment submit, in support of the motion, "a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the

---

[1]The District of Puerto Rico revised, reorganized, and renumbered its compendium of local rules in September of 2003. Because the summary judgment motions in this case were adjudicated prior thereto, we refer throughout to the earlier version.

-4-

record." D.P.R.R. 311.12. In turn, the rule requires a party opposing a summary judgment motion to include with its opposition a short and concise statement "of the material facts as to which it is contended that there exists a genuine issue to be tried," with proper record citations. Id. The penalty for failure is potentially harsh; the facts delineated in the movant's statement will be "deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id.

Rules such as Local Rule 311.12 were adopted pursuant to a suggestion of this court, see Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 931-32 (1st Cir. 1983), and we consistently have upheld their use, see, e.g., Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004); Ruiz Rivera, 209 F.3d at 28. Here, however, the issue is not the enforceability of the local rule but, rather, how it applies to oppositions to summary judgment motions. Specifically, the plaintiff questions the way in which the district court, based on its reading of the local rule, restricted its consideration of the plaintiff's evidence in analyzing the defendants' summary judgment motion.[2] In

<hr />

[2]To be sure, the district court also denied the plaintiff's motion for summary judgment on the basis of the plaintiff's supposed noncompliance, qua movant, with the requirements of D.P.R.R. 311.12. See Euromodas, 253 F. Supp. 2d at 204 n.5 (refusing to "scavenge through the record to pinpoint the facts that would support Euromodas's arguments"). But as our subsequent discussion of the merits reveals, see infra Part III, any error in that regard was harmless. Accordingly, we discuss only the district court's treatment of the plaintiff's opposition.

an effort to put matters into perspective, we explain what transpired.

Zanella moved for summary judgment in full compliance with Local Rule 311.12 (Clubman joined Zanella's motion and we need not discuss separately its quest for summary judgment). When the plaintiff served its opposition, it omitted a separate statement listing controverted material facts. The district court perceived this omission as a "blatant disregard" of Local Rule 311.12, proceeded to "deem as admitted the relevant uncontested facts submitted by Zanella with its motion for summary judgment," and limited the summary judgment record to those facts. Euromodas, 253 F. Supp. 2d at 203-04.

The plaintiff asserts that this approach constituted error. It tells us that it complied with the imperatives of Local Rule 311.12 notwithstanding its failure to formulate a separate statement of controverted material facts. Therefore, its thesis runs, the district court, while entitled to deem the defendants' assertions of fact admitted, also should have taken the facts identified in the plaintiff's opposition fully into account.

We conclude that the district court erred in its interpretation of the local rule. The court found Euromodas to have violated Local Rule 311.12 merely because it did not include a separate statement of disputed facts with its opposition. But Local Rule 311.12, as written, does not always require that a party

opposing summary judgment put forth its version of the facts in a separate statement. The rule requires only that the nonmovant identify any facts in the movant's statement with which it takes issue. See D.P.R.R. 311.12. In other words, an opposing party is required to file such a statement only if (and to the extent that) it wishes to register and preserve a potential dispute as to one or more of the facts advanced by the movant.

In this instance, Euromodas was content to accept the facts proffered by the defendants, so the district court appropriately treated those facts as admitted. The plaintiff, however, regarded those facts as incomplete, and it desired to augment them with further facts — facts that it viewed as undisputed and which were neither inconsistent with nor contradictory to those contained in the movants' Local Rule 311.12 statement. The local rule, as it existed at that time, did not require those additional facts to be presented in a particular form.[3] Because those additional facts were supported by the record, the lower court should have considered them (while at the same time accepting the facts set forth in the movants' Local Rule 311.12 statement). Its failure to do so constituted error.

---

[3]The current iteration of this obligation, codified in Local Rule 56(c), is worded somewhat differently. We take no view as to what that language requires. See supra note 1.

This error does not necessarily require reversal. After all, we afford de novo review to orders granting or denying summary judgment. Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). And, moreover, we are not wedded to the trial court's reasoning, but, rather, may sustain its decree on any ground made manifest in the record. Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). Consequently, we undertake an examination of the full summary judgment record in order to assess the supportability of the lower court's order. Accord Rathbun v. AutoZone, Inc., 361 F.3d 62, 70-80 (1st Cir. 2004) (proceeding in this manner).

## A

Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. There are two prerequisites for a successful section 1 claim. First, there must be concerted action. Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984); Podiatrist Ass'n, 332 F.3d at 12. Second, the actors' agreement must involve either restrictions that are per se illegal or restraints of trade that fail scrutiny under the rule of reason. Monsanto, 465 U.S. at 761; Podiatrist Ass'n, 332 F.3d at 12.

In this instance, the plaintiff's case hinges on the interposition of what is alleged to be an illegal vertical restraint. A vertical restraint is a restraint of trade involving a combination of persons at different levels of the market structure. See M & H Tire Co. v. Hoosier Racing Tire Corp., 733 F.2d 973, 978 (1st Cir. 1984). While vertical restraints "may reduce intrabrand competition by limiting the number of sellers of a particular product, competing for a given group of buyers, they also promote interbrand competition by allowing a manufacturer to achieve certain efficiencies in the distribution of its products." Id. (quoting Oreck Corp. v. Whirlpool Corp., 579 F.2d 126, 131 (2d Cir. 1978) (en banc)). Thus, vertical restraints often have both pro-competitive and anti-competitive effects. For this reason, such restraints generally are not deemed per se illegal, but, rather, are tested under a rule of reason analysis. See Business Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 723 (1988).

Vertical price-fixing agreements, however, are a special subset of vertical restraints. As such, they qualify for different treatment. A vertical price-fixing agreement that establishes a minimum price normally is regarded as a naked restraint of trade and, thus, as illegal per se. See Business Elecs. Corp., 485 U.S. at 724; Dr. Miles Med. Co. v. John D. Park & Sons Co., 220 U.S. 373, 404-09 (1911); cf. State Oil Co. v. Khan, 522 U.S. 3, 22

-9-

(1997) (holding that a maximum vertical price maintenance scheme is not per se illegal).

Here, the district court concluded that the plaintiff had not adduced enough evidence to sustain a viable section 1 claim under either theory. Euromodas, 253 F. Supp. 2d at 205-06. We must examine this conclusion in light of the full summary judgment record. See supra Part II. In carrying out that task, we remain cognizant that the proper office of summary judgment is to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for a trial. Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 793-94 (1st Cir. 1992). It follows that summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In sifting the evidence, we must array it in the light most hospitable to the party opposing summary judgment (here, the plaintiff), indulging all reasonable inferences in that party's favor.[4] Houlton Citizens' Coalition, 175 F.3d at 184; Garside, 895 F.2d at 48. To avoid summary judgment, the evidence upon which the

_____

[4]The fact that the plaintiff had cross-moved for summary judgment does not alter this methodology. In that circumstance, a reviewing court examines each motion independently, applying the principles articulated above. See Blackie v. State of Me., 75 F.3d 716, 721 (1st Cir. 1996).

nonmovant relies to create a genuine issue of material fact must be "significantly probative," not merely colorable. <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

In addition to these familiar principles, a special constraint applies in vertical restraint cases. Antitrust liability is strong medicine (for example, it exposes a defendant to treble damages, <u>see</u> 15 U.S.C. § 15), and thus section 1 of the Sherman Act has been authoritatively interpreted to limit the inferences that may be drawn from ambiguous evidence. <u>Matsushita Elec. Indus. Co.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986). In a vertical restraint case,[5] conduct that is "as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." <u>Id.</u> This means that a section 1 antitrust case predicated upon an alleged vertical restraint can survive summary judgment only if the evidence relied upon by the nonmovant, when viewed through this specially-constructed lens, suffices to show a "bona fide dispute about a fact that has the potential of affecting the outcome of the case under the applicable law." <u>Podiatrist Ass'n</u>, 332 F.3d at 13.

To create a trialworthy issue in a vertical restraint case brought pursuant to section 1 of the Sherman Act, a plaintiff

---

[5]It is abundantly clear that this special constraint — limiting inferences from ambiguous evidence — applies in vertical restraint cases. <u>See</u>, <u>e.g.</u>, <u>Monsanto</u>, 465 U.S. at 763-64. The proposition may be less clear in horizontal conspiracy contexts, but we need not probe that distinction here.

must make two showings: concerted action and harm to the competitive process. See id. at 12. The plaintiff cannot make either of these showings here.

We need not go beyond the first prong of this two-part test. To satisfy that requirement, there "must be evidence that tends to exclude the possibility of independent action by the manufacturer and distributor." Monsanto, 465 U.S. at 764. Phrased another way, there must be "direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." Id. (citation and internal quotation marks omitted). This makes perfect sense: section 1 is not intended to prohibit entrepreneurial action, and a manufacturer, acting independently, ordinarily has a right to sell (or not to sell) to whichever customer(s) it chooses. See id. at 761; United States v. Colgate & Co., 250 U.S. 300, 307 (1919). Thus, absent a showing of concerted action, a section 1 claim fails as a matter of law.

**B**

The basic premise of the plaintiff's complaint is that a manufacturer (Zanella) and a dealer (Clubman) conspired to maintain an artificially high retail price for Zanella pants; and that Clubman, to further this scheme, successfully pressured Zanella to stop selling goods to its price-cutting competitor (Euromodas). The question is whether these averments, on the facts of record and

-12-

under the applicable legal standards, add up to a potential antitrust violation.

As a threshold matter, the plaintiff suggests that we should answer this question in the affirmative because the defendants failed to provide any evidence negating the possibility that they were acting in combination. Appellant's Br. at 32. We reject this resupinate reasoning. In an antitrust case, the burden is on the accuser to make at least a prima facie showing of concerted action. See Monsanto, 465 U.S. at 763; Garment Dist., Inc. v. Belk Stores Servs., Inc., 799 F.2d 905, 911 (4th Cir. 1986). Thus, we inquire whether the plaintiff has presented evidence that reasonably tends to prove that the manufacturer and others conspired to achieve an illicit objective. Monsanto, 465 U.S. at 764.

We start this phase of our inquiry by rehearsing the facts that were deemed admitted for purposes of summary judgment. See Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43-44 (1st Cir. 2001) (discussing effect of failure to controvert facts contained in movant's statement of material facts not in dispute); Ruiz Rivera, 209 F.3d at 28 (similar). Both Clubman and the plaintiff sell men's clothing at retail in San Juan. Historically, their wares included Zanella trousers. In mid-1996, Clubman informed Zanella that the plaintiff had sold trousers to a common customer at a sharply discounted price. A face-to-face

-13-

conversation between officials of Zanella and officials of the plaintiff regarding Clubman's complaints occurred in July of 1996. The next year, Clubman again expressed concern to Zanella about the plaintiff's persistent discounting. Despite Clubman's obvious unhappiness, Zanella continued to supply the plaintiff. Clubman placed no further orders for Zanella pants.

Zanella kept up a dialogue with Clubman during this period of abstinence. At a meeting in New York, held in September of 1997, Zanella informed the plaintiff that Clubman had agreed to create "Zanella corners" in its stores. Although Zanella expressed enthusiasm about this concept, pricing policies were not discussed. In or around April of 1998, however, Zanella told the plaintiff that it would no longer sell to it. Zanella gave no reason for this exclusionary decision. Clubman proceeded to resume the marketing of Zanella trousers and to inaugurate the "Zanella corners."

To these facts we must add the augmentative evidence assembled by the plaintiff. In a deposition, Clubman's chief executive officer (Germán Ramírez) testified that he had resolved not to handle Zanella pants in the future unless Zanella satisfactorily addressed his concerns about being undersold by the plaintiff. Ramírez discussed this resolve with Zanella's president (Armando DiNatale) and received assurances that Zanella would "take care of" the problem. Ramírez professed neither to know nor to

care how Zanella intended to proceed or what action it purposed to take. The plaintiff sees this as "smoking gun" testimony. It asks us to interpret Ramírez's words as showing that Clubman was seeking to have Zanella cut off its (the plaintiff's) supply of Zanella trousers and terminate the preexisting distribution relationship.

The plaintiff also places substantial weight on the testimony of a Zanella vice-president (Thomas Cohan), which corroborates the fact that Clubman threatened to stop buying Zanella pants unless Zanella addressed Clubman's concerns about the plaintiff's pricing practices. Cohan's testimony does not, however, go anywhere near as far as the plaintiff suggests. We have scoured the deposition transcript and find no support for the plaintiff's brazen assertion that Cohan's testimony "confirmed that Zanella and Clubman agreed that Euromodas be terminated in order to allow Clubman to maintain its preferred price of $265 [per pair of trousers]." Appellant's Br. at 38.

The plaintiff also relies, to some extent, on DiNatale's deposition testimony. Without question, that testimony shows that Zanella made no bones about its intention to halt trouser sales to the plaintiff. It also supports a clear inference that, when pressed, Zanella opted to do business with the larger retailer (Clubman) rather than to jeopardize that relationship by continuing to deal with the plaintiff. But DiNatale, like Cohan, made no mention of wanting to maintain a particular price or price level,

and the deposition, taken as a whole, does not evince concerted action.

These facts leave room for many inferences, which — to the extent that they are reasonable — ordinarily would be taken in favor of the plaintiff. See Podiatrist Ass'n, 332 F.3d at 13. In Sherman Act cases, however, the permissible inferences that can be drawn from ambiguous evidence are quite limited. Matsushita Elec., 475 U.S. at 588. If the evidence shows conduct that is as consistent with lawful competition as it is with an illicit conspiracy, it cannot be said to support an inference of concerted action. Id.

So it is here. The record, read as favorably to the plaintiff as antitrust law and summary judgment practice permit, shows that Clubman complained bitterly to Zanella about the plaintiff's low prices, and that Zanella reassured Clubman that it would, in some unarticulated manner, "take care of" the situation (i.e., the price-cutting issue). There is nothing, however, that reflects a commitment on Zanella's part to a minimum retail price maintenance scheme or that suggests that Zanella's reassurances were anything more than an acknowledgment of its unilateral decision to stop supplying the plaintiff. The raw fact that a distributor's actions are an attempt to pressure a manufacturer into terminating a distribution relationship with a price-cutting

competitor is not enough either to show concerted action or to defeat summary judgment.  See Garment Dist., 799 F.2d at 911.

This case is not unique.  Other courts consentiently have held that the fact that a dealer was terminated in response to complaints from competing dealers is insufficient, without more, to survive a motion for summary judgment.  See, e.g., Winn v. Edna Hibel Corp., 858 F.2d 1517, 1520 (11th Cir. 1988); Garment Dist., 799 F.2d at 908; Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 923-24 (2d Cir. 1985); see also Monsanto, 465 U.S. at 763-64 (explaining that "something more than evidence of complaints is needed").  The policy justification for this rule is powerful.  To allow "the inference of concerted action on the basis of receiving complaints alone and thus to expose the defendant to treble damage liability would both inhibit management's exercise of its independent business judgment and emasculate the terms of the statute."  Monsanto, 465 U.S. at 764 (quoting Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 637 F.2d 105, 111 n.2 (3d Cir. 1980)).  Thus, even were we to assume for argument's sake that Zanella's termination of its distribution relationship with the plaintiff was in direct response to Clubman's withdrawal of its patronage, summary judgment would nonetheless be warranted.  See Winn, 858 F.2d at 1520 (stating that "a manufacturer may legitimately respond to pressure from a dealer in order to avoid losing that dealer's business").

The plaintiff strives to deflect the force of this reasoning in two ways: (i) by seeking refuge in a pair of Eleventh Circuit cases, and (ii) by pointing to the fact that Zanella never advanced any alternative explanation for severing ties with the plaintiff. Neither foray succeeds.

The Eleventh Circuit's decision in Helicopter Support Systems, Inc. v. Hughes Helicopter, Inc., 818 F.2d 1530 (11th Cir. 1987), provides no shelter for the plaintiff. Although the court of appeals vacated summary judgment in favor of the manufacturer-defendant in that antitrust case, the evidence was appreciably different. There was proof that the manufacturer terminated a price-cutter, informed the complaining distributor of the termination, and requested that it advise the manufacturer if it learned about any further price-cutters. Id. at 1535. The complaining distributor responded by thanking the manufacturer in a way that the court believed reasonably could be viewed as an agreement to report future violations. See id. Last — but far from least — the surviving distributorship agreement itself contained language that reasonably could be read as fixing the resale price of the goods. Id. at 1536. Given these idiosyncratic facts, the Eleventh Circuit's decision that the case presented a trialworthy issue, id. at 1536-37, is unhelpful here.

The plaintiff's reliance on City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548 (11th Cir. 1998), is equally mislaid.

-18-

In that antitrust case, the court overturned the entry of summary judgment in favor of one of the defendants because its former chief executive had admitted an involvement "in fixing chlorine prices in the [relevant market area]." Id. at 557; see also id. at 568. The court overturned the entry of summary judgment as to two other defendants based on its determination that certain expert testimony and data precluded summary judgment. Id. at 569. The record before us contains neither an analogous admission of illegal activity nor any comparable expert testimony or data. Accordingly, that decision too is inapposite.

The plaintiff's second foray is no more rewarding. It is true that alternative explanations sometimes are cited as a basis for finding the existence of substantial evidence supporting a plausible and legitimate reason for the conduct of antitrust defendants. See, e.g., Burlington Coat, 769 F.2d at 923-24. There is no flat rule, however, that requires a defendant to proffer an alternative explanation. In some instances, the facts speak for themselves.

This is such a case. The most natural inference from the evidence — that the manufacturer took sides as between two dealers and chose the more lucrative of them — makes manifest a legitimate, independent reason for terminating the less desirable distribution relationship. See Garment Dist., 799 F.2d at 910-11. Any other inference necessarily would require building an antitrust claim on

ambiguous evidence — a practice that the Supreme Court has forbidden. See Matsushita, 475 U.S. at 588 (warning that conduct that is equally consistent with permissible competition and with illegal activity cannot "support an inference of antitrust conspiracy"). Because the plaintiff failed to provide any significantly probative evidence tending to negate this legitimate business reason, the lack of an alternative explanation is irrelevant.

That ends this aspect of the matter. The plaintiff has charged price-fixing, impure and simple — and the utter absence of meaningful evidence of concerted action dooms the plaintiff's case.

## C

Although we need go no further, we add a coda. Even were we to find significantly probative evidence of concerted action (which we do not), the fabric of the plaintiff's case reveals yet another flaw. For the sake of completeness, we mention this shortcoming.

An agreement to terminate a price-cutter to placate another dealer does not constitute a per se violation of section 1 of the Sherman Act. See Business Elecs. Corp., 485 U.S. at 726-27. To render such an agreement illegal per se, there must be "a further agreement on the price or price levels to be charged by the remaining dealer." Id. at 726. Without an agreement as to a specific minimum price or price level, a vertical restraint is

-20-

unlawful only if it fails a rule of reason analysis.  Id. at 726-27; Bi-Rite Oil Co. v. Indiana Farm Bureau Coop. Ass'n, Inc., 908 F.2d 200, 203 (7th Cir. 1990).

There is no evidence here that the defendants ever agreed on either a minimum price or price level.  Thus, the plaintiff's claim of per se illegality founders.  See Business Elecs. Corp., 485 U.S. at 726-27; A-Abart Elec. Supply, Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1403 (7th Cir. 1992); see also Hovenkamp, supra § 11.1, at 441.

This leaves the rule of reason.  In a vertical restraint case, liability under that approach requires a showing of harm to the competitive process.  See Interface Group, Inc. v. Mass. Port Auth., 816 F.2d 9, 10 (1st Cir. 1987) (clarifying that the term unreasonable anticompetitive conduct, when used in an antitrust context, necessarily refers "to actions that harm the competitive process").

Here, the plaintiff has made no showing that the putative restraint had an adverse impact on the competitive process. Although it tendered evidence of its own losses, an injury to an individual competitor is not the legal equivalent of an injury to competition in the relevant market.  Id.  Without any evidence that the defendants' actions were inimical to the competitive process, the plaintiff — who had the burden of proof on this point,  see Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 29 (1984)

-21-

— cannot make out at a trialworthy claim under section 1 of the Sherman Act.

## IV

We summarize succinctly.[6]  Although the district court took too narrow a glimpse of the summary judgment record, de novo review of the record as a whole persuades us that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law.  There is no rational view of the proffered facts that can support the imposition of antitrust liability.

**Affirmed**.

---

[6]Because we have upheld the entry of summary judgment for the defendants, it would be an empty exercise to probe the circumstances surrounding the denial of the plaintiff's cross-motion for summary judgment. We caution, however, that we express no opinion on the district court's reasoning in that regard. See Euromodas, 253 F. Supp. 2d at 204 n.5.