Durante v. Belknap, NH                    CV-03-333-SM  02/16/05

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Count Durante,
      Plaintiff

      v.                                    Civil No. 03-333-SM
                                            Opinion No. 2005 DNH 026
County of Belknap,
New Hampshire,
      Defendant


**O R D E R**


Plaintiff, Count Durante, brings this suit against defendant County of Belknap, New Hampshire ("the County"), seeking redress for injuries he sustained after he allegedly fell while attempting to enter the Belknap County Courthouse ("the courthouse").  Count I asserts that the County was negligent in failing to provide a safe passageway for the public to enter the courthouse.  In Count II, Durante asserts violations of his rights under the Americans with Disabilities Act ("ADA" or the "Act"), 42 U.S.C. § 12131, et seq.  Specifically, Durante asserts that the County failed to make the courthouse readily accessible to individuals with disabilities, as required by Title II of the Act.

The County now moves for summary judgment.  Durante objects. For the reasons set forth below, the motion is granted.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  In considering a motion for summary judgment, the court must view the record "in the light most hospitable" to the nonmoving party.  Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 17 (1st Cir. 2004) (citing Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  An issue is "'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).  An issue is "'material' if it potentially affects the outcome of the suit."  Id. at 199-200.

2

In support of its summary judgment motion, the moving party must "identify[] those portions of [the record] which . . . demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party successfully demonstrates the lack of a genuine issue of material fact, "the burden shifts to the nonmoving party . . . to demonstrate that a trier of fact reasonably could find in [its] favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25). Once the burden shifts, the nonmoving party "may not rest upon mere allegations or denials of his [or her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

## BACKGROUND

The facts, set forth in the light most favorable to Durante, are as follows. Durante is visually impaired and often walks with the assistance of his guide dog, Patches. On August 29, 2000, Durante and Patches attempted to enter the Belknap County Courthouse. Patches led Durante to the old entrance to the building, but the doors were locked. (Compl. at 1.) Durante

3

"observed a sign on the [locked] door designating the entrance and an arrow pointing towards the right." (Compl. at 1.) Patches then led Durante down the front steps and onto what Durante believed to be an "asphalt walkway." (Compl. at 1.) While traversing the "walkway," which apparently was a drainage feature of some sort, and not meant for pedestrian travel, Durante "hit a low branch on a tree with his nose, face and eyes, and was rendered unconscious." (Compl. at 1.) Durante fell, and both he and Patches sustained injuries.

The courthouse is located in Laconia, New Hampshire. In 1976, after determining that the existing building was too small to accommodate the needs of the community, the County constructed a new addition. (Def's Mot. Summ. J., Ex. 1. (Cook Aff.) ¶ 4.) While the old entrance remains intact, visitors must now enter the building through the new addition. (Cook Aff. ¶¶ 5-6.) The old entrance, though locked, is not inaccessible – there are no physical barriers preventing one from approaching the former entrance. (Compl. at 2.)

4

Given the injuries he suffered, Durante brought this two-count suit against the County for negligence and violations of his rights under the ADA.

**DISCUSSION**

The County moves for summary judgment, arguing that it cannot be found in violation of the ADA because the courthouse has one ADA compliant entrance. Further, the County argues that the negligence claim should be dismissed for lack of jurisdiction. Durante objects, arguing that even though the courthouse did have an ADA-compliant entrance, that entrance was not "readily" accessible to him as a visually impaired individual. Moreover, Durante asserts that the negligence claim should not be dismissed because the County removed this suit to federal court, and dismissal would require him to return to state court.

I. ADA CLAIM

To prevail on a ADA Title II claim, a plaintiff must prove "(1) that he [or she] is a qualified individual with a disability; (2) that he [or she] was either excluded from

5

participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000) (interpreting 42 U.S.C. § 12131). The parties agree that the County, which owns the courthouse, is a public entity. There is also no dispute that Durante is a "qualified individual with a disability." The parties do dispute, however, whether Durante was denied access to "services, programs, or activities" due to his visual impairment.

Because the Act "does not elaborate on the obligation of a public entity . . . in the provision of 'services, programs, or activities[]' . . . [the court] must rely . . . on the regulations promulgated under Title II." Parker, 225 F.3d at 5 (quoting 42 U.S.C. § 12132). One of those regulations, 28 C.F.R. § 31.150(a), requires that "[a] public entity shall operate each service, program , or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

The Act and relevant regulations have been construed to place the primary emphasis of Title II on "'program accessibility' rather than 'facilities accessibility.'" Parker, 225 F.3d at 6. Courts have thus held that if a public facility has at least one entrance accessible to individuals with disabilities, and that entrance affords access to the various services, programs, or activities of the public entity, then the facility is compliant with Title II of the Act. See, e.g., id. at 7; see also Kasten v. Port Auth. of N.Y., No. 98-CV-4988, 2002 WL 31102689, *4-*5 (E.D.N.Y. Sept. 10, 2002) (airport terminal with only one ADA-compliant full-service elevator).

Here, there is no dispute that the courthouse has at least one entrance that is accessible to individuals with disabilities, including those with visual impairments. Plaintiff concedes that the courthouse's new entrance is "accessible and usable by individuals with disabilities." (Pl's Obj. to Sum. J. at 2 ("plaintiff does not dispute the courthouse has a complying entrance")). Plaintiff argues, however, that despite the one ADA-compliant entrance, the building was still not "readily

7

accessible" to individuals with disabilities.  Plaintiff points to Parker, where a public university was required to make its Botanical Gardens "'readily accessible' to and 'usable' by individuals with disabilities."  225 F.3d at 6.  But the court in Parker went on to explain that while "the University was obligated to ensure that each service, program or activity at the Botanical Gardens 'when viewed in its entirety,' was accessible to individuals with disabilities . . . [it] . . . [was] not required to make every passageway in and out of the Monet Garden accessible."  Id. at 7.  So, even under the analysis used in Parker, the existence of one ADA-compliant entrance necessarily renders the courthouse's services, programs, and activities "readily accessible" to individuals with disabilities.

Put differently, plaintiff essentially asserts that, notwithstanding the courthouse's compliance with the ADA, the County had additional obligations to individuals with visual disabilities.  But as Parker also explains, "the primary injury alleged and proven under Title II in a case such as this remains the alleged violation by the [County] of its statutory duty to disabled persons to prevent discriminatory denial of access to a

8

service, program, or activity." 225 F.3d at 7. Therefore, by providing one ADA-compliant entrance to the courthouse, which, in turn, rendered the courthouse services, programs, and activities readily accessible to persons with disabilities, the County satisfied its legal duty under the Act.

Although Durante suffered an unfortunate accident, it did not result from a violation of his rights under the Act. In Association for Disabled Americans v. City of Orlando, 153 F. Supp. 2d 1310, 1320 (2001), the court found that even though a public theater and sports arena had numerous areas and features that were inaccessible to individuals in wheelchairs, "when viewed in their entirety," both venues were "readily accessible to disabled patrons." The court further explained that while the Orlando plaintiffs "have identified several elements at each facility that pose difficulties for individuals in wheelchairs," id., which may "inconvenience disabled individuals to varying extents . . . none of them are so severe that they effectively prevent disabled individuals from attending games, performances or events." Id.

Like the plaintiffs in Orlando, Durante has perhaps identified an area of a public facility that poses difficulty and inconvenience for visually impaired individuals (only one ADA-compliant entrance). But considering the facility in its entirety, that inconvenience is not so significant that it "effectively prevent[s] disabled individuals" from participating in the services, programs, or activities of the courthouse.

Because Durante has failed to identify a genuine issue of material fact regarding accessibility of the courthouse's services, programs, or activities to individuals with disabilities, defendant's motion for summary judgment as to the ADA claim is granted.

II. NEGLIGENCE CLAIM

Under the provisions of 28 U.S.C. § 1367(a), a federal court with original jurisdiction over federal claims may also exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction . . ." Another portion of the same statute, § 1367(c), provides

10

that a district court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it had original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court of Appeals has held that "if the [district] court dismisses the foundational federal claims, it must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)). The factors district courts should consider when determining whether to exercise supplemental jurisdiction over state law claims include: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity. See id. Explaining the fairness and comity factors, the Supreme Court noted:

11

> Needless decisions of state law should be avoided both
> as a matter of comity and to promote justice between
> the parties, by procuring for them a surer-footed
> reading of applicable law. Certainly, if the federal
> claims are dismissed before trial even though not
> unsubstantial in a jurisdictional sense, the state
> claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).

In the interest of comity, this court declines to exercise supplemental jurisdiction over plaintiff's state law claim.

## CONCLUSION

The County's motion for summary judgment (document no. 17) is granted as to the ADA claim. The court declines to exercise supplemental jurisdiction over the state law negligence claim (Count I). Accordingly, the clerk of the court shall enter judgment in accordance with this order and remand the state negligence claim to the New Hampshire Superior Court from which it was removed.

12

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 16, 2005

cc: Philip A. Brouillard, Esq.
    Debra W. Ford, Esq.