Begovic v. Water Pik                    04-CV-447-SM  04/06/05

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Rusmir Begovic,
        Plaintiff

        v.                                    Civil No. 04-cv-447-SM
                                              Opinion No. 2005 DNH 059
Water Pik Technologies, Inc.,
        Defendant


_____ **O R D E R**


        Rusmir Begovic brings this discrimination suit against Water
Pik Technologies, Inc. ("Water Pik" or "the company"), claiming
he was subjected to disparate treatment in violation of 42 U.S.C.
§ 2000e-2(a)(1) (Counts I, II, and III).  He also asserts a claim
of retaliation by the defendant in violation of 42 U.S.C.
§ 2000e-3 (Count IV), along with two related state claims.


        Defendant now moves for summary judgment, and plaintiff
moves for partial summary judgment (Count IV).  For the reasons
set forth below, defendant's motion for summary judgment is
granted and plaintiff's motion is denied.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the court must view the record "in the light most hospitable" to the nonmoving party. Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 17 (1st Cir. 2004) (citing Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). An issue is "'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). An issue is "'material' if it potentially affects the outcome of the suit." Id. at 199-200.

In support of its summary judgment motion, the moving party must "identify[] those portions of [the record] which . . . demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the

2

moving party successfully demonstrates the lack of a genuine issue of material fact, "the burden shifts to the nonmoving party . . . to demonstrate that a trier of fact reasonably could find in [its] favor."  DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25).  Once the burden shifts, the nonmoving party "may not rest upon mere allegations or denials of his [or her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

## BACKGROUND

The facts, set forth in the light most favorable to Begovic are as follows.  Begovic "was born in the former Yugoslavia, and immigrated to the United States of America in 1993."  (Compl. ¶ 6.)  Around October of 1993, Begovic was hired by Teledyne Laars, a corporate predecessor to Water Pik, as a CNC Machinist. (Compl. ¶ 4.)  He was primarily responsible for "making manifolds for commercial boilers."  (Compl. ¶ 4.)  Begovic's position did not require that he supervise other employees.  (Def.'s Mot. Summ. J., Tab 2 (Farrell Aff.) ¶ 5.)

3

In December 2001, Water Pik posted a job announcement for a "Production Supervisor." (Farrell Aff., Ex. A.) The person selected for the position was expected to "supervise approximately 45 employees," and accordingly, the announcement sought candidates with "experience in supervising not only the manufacturing process, but also in supervising the employees." (Farrell Aff. ¶ 3.) Begovic applied for the position along with three other employees, all of whom were interviewed by Water Pik personnel. (Farrell Aff. ¶ 4.) Because none of the four in-house applicants, including Begovic, were found qualified, Water Pik hired someone from outside the company, Steve Bailey, to fill the position. (Farrell Aff. ¶¶ 6-8.)

Begovic learned that he was not selected for the position when he received a memorandum dated January 2, 2002, noting that, in order to become a production supervisor, he must "develop [his] interviewing skills" and "be able to provide examples of resume knowledge." (Farrell Aff., Ex. B.)

Several months later, another opening, this time for a "Pennant Production Lead," became available. (Farrell Aff. ¶ 9.)

4

Begovic applied for that position but was again turned down, because the company "did not consider him to be a person likely to communicate well with others." (Farrell Aff. ¶ 10.) The company reached that conclusion, in part, because Begovic "had been disciplined for 'inappropriate behavior towards another' employee." (Farrell Aff. ¶ 10.) The position was filled by another Water Pik employee who demonstrated "strong communication and teamwork skills." (Farrell Aff. ¶ 11.) Begovic was notified of the company's decision, in writing, on April 16, 2003. (Farrell Aff., Ex. D.)

In addition to his attempts at professional advancement within Water Pik, Begovic participated in the company's tuition reimbursement plan. (Def.'s Mot. Summ. J., Tab 3 (Hope-Reese Aff.) ¶ 8.) That plan allowed employees of Water Pik to "enhance and sharpen skills that each employee brings to his or her job." (Hope-Reese Aff., Ex. H.) The company required that "the subject of the class or program of study . . . be directly related to the employee's current position or to future positions in the company." (Hope-Reese Aff. ¶ 9.)

Over a period of approximately six years, Begovic obtained reimbursement of $20,662.85 - more than any other Water Pik employee - for tuition incurred while he pursued both an associate's and a bachelor's degree. (Hope-Reese Aff. ¶ 8.) Begovic continued his education, pursuing a Master's degree in Business Administration ("MBA"), and continued to submit requests for tuition reimbursement to Water Pik. (Hope-Reese Aff. ¶¶ 9-11.) On March 8, 2002, Begovic was given his last tuition reimbursement payment, and was notified that "no further requests . . . would be honored." (Hope-Reese Aff. ¶ 10.)

Out of 137 employees, Begovic was one of three who took advantage of the tuition reimbursement program. (Hope-Reese Aff. ¶ 12.) The other two participants, both Caucasian males, were working toward degrees that the company believed "would benefit both [the employee] and [Water Pik] in the future." (Hope-Reese Aff. ¶ 12.) The company believed that continuing to pay for Begovic's education, however, "would further no business purpose for the company, directly or indirectly." (Hope-Reese Aff. ¶ 11.) Any company positions for which Begovic was eligible would not "require an [MBA] . . . or the knowledge gained in the

pursuit of [an MBA]."  (Hope-Reese Aff. ¶ 11.)  Water Pik's concerns were exacerbated by a comment Begovic made on December 27, 2001, explaining that after he received his degree, he "intended to leave Water Pik to start his own import-export business."  (Hope-Reese Aff. ¶ 11.)  The company was also facing "budgetary constraints" which affected "many operations of the business unit, including employee benefits."  (Hope-Reese Aff. ¶ 11.)

On March 24, 2002, Begovic sent an e-mail to Water Pik's Vice President of Human Resources, Theresa Hope-Reese, alleging harassment by some of his coworkers and complaining about being denied tuition benefits.  (Hope-Reese Aff., Ex. E.)  The company promptly investigated.  (Hope-Reese Aff. ¶ 4.)  On September 15, 1999, Begovic filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination against him on the basis of his religion and national origin.  (Hope-Reese Aff. ¶ 25.)  The 1999 complaint was eventually dismissed, but Begovic filed another complaint on February 26, 2003, alleging employment discrimination on the basis of national origin.  (Hope-Reese Aff. ¶ 26.)  Although the

2003 complaint was also dismissed, the EEOC issued a Right-to-Sue letter on September 2, 2004.  (Compl., Appx. A.)

Begovic is paid an hourly wage based upon a structured pay scale that corresponds to his job classification.  (Hope-Reese Aff. ¶ 14.)  According to the company's records, Begovic has received twelve pay increases since he started working for Water Pik (Hope-Reese Aff. ¶ 12), six of which took place after Begovic's complaints were filed with the EEOC.  Begovic's most recent pay increase, effective May 11, 2004, was the result of a "company initiative" to "improve [Water Pik's] competitive advantage in recruiting skilled workers."  (Hope-Reese Aff. ¶ 16.)  The initiative increased the pay range for everyone in Begovic's job classification.  (Hope-Reese Aff. ¶ 16.)

As a result of being denied two promotions and additional tuition reimbursement requests, and based upon a belief that he has been underpaid since November 1999, Begovic brought this six-count suit against Water Pik for violations of his rights under 42 U.S.C. §§ 2000e-2, 2000e-3, and related state statutes.

8

**DISCUSSION**

Defendant moves for summary judgment on all six counts, arguing that, as to Counts I, II, and III, plaintiff has failed to establish a prima facie case of unlawful employment discrimination. Regarding Count IV, defendant contends that plaintiff has failed to set forth any evidence to support his retaliation claim. Defendant does not appear to make any direct argument regarding Counts V and VI, which arise under state law.

I. Title VII Claims

"The operative provision of Title VII makes it unlawful to 'discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . [race, color, religion, sex, or national origin].'" Noviello v. City of Boston, No. 04-1719, 2005 U.S. App. LEXIS 2664, *27 (1st Cir. Feb. 16, 2005) (quoting 42 U.S.C. § 2000e-2(a)(1)). "[I]n a disparate treatment case, '[t]he central focus of the inquiry . . . is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.'" Thomas v. Digital Equip. Corp., 880 F.2d 1486, 1490

9

(1st Cir. 1989) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)) (internal quotation marks omitted).

Although "[t]he core inquiry in . . . disparate treatment cases is whether the defendant intentionally discriminated against the plaintiff because of [his or] her gender . . . [d]irect evidence of discriminatory intent is not required." Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) (internal citations omitted).  In considering the plaintiff's claim, absent any direct evidence of discrimination, the court must "use the burden-shifting analysis first established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003) (citing Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000)).

> Under the McDonnell Douglas analysis, a plaintiff must establish a prima facie case, which in turn gives rise to an inference of discrimination.  See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). The employer then must state a legitimate, nondiscriminatory reason for its decision.  See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir. 2002).  If the employer can state such a reason, the inference of discrimination disappears and the plaintiff is required to show that the employer's

10

stated reason is a pretext for discrimination. <u>See id.</u>
at 45.

<u>Kosereis v. Rhode Island</u>, 331 F.3d 207, 212 (1st Cir. 2003).


"Because employment discrimination cases arise in a variety of contexts, the prima facie elements must be tailored to the given case." <u>Rodriguez-Torres v. Caribbean Forms Mfr., Inc.</u>, Nos. 03-2223, 03-2573, 2005 U.S. App. LEXIS 3016, *10 (1st Cir. Feb. 22, 2005) (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002)). Put differently, "[t]he elements of the plaintiff's prima facie case vary according to the nature of [his or] her claim." <u>Rathbun</u>, 361 F.3d at 71. The court, therefore, considers each count in terms of its unique prima facie case requirements.


A. <u>Disparate Treatment - Failure to Promote (Count I)</u>

In order to prevail on his Title VII failure to promote claim, plaintiff must show that he "(i) is a member of a protected class who (ii) was qualified for an open position for which [he] applied, but (iii) was rejected (iv) in favor of

11

someone possessing similar qualifications."  Id. (citing Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002)).

It is uncontested that Begovic was rejected on two occasions for job openings at Water Pik's Rochester, New Hampshire facility, and that plaintiff is a member of a protected class.[1] Defendant argues it is entitled to summary judgment because plaintiff has failed to establish two elements of his prima facie case: (1) that he was qualified for the positions; and (2) he was denied the promotions in favor of someone with similar qualifications.  Defendant is correct.

The first position for which plaintiff applied required, according to the published job description, 5 to 7 years of supervisory experience.  Plaintiff did not have any supervisory

---

[1] There is, however, some dispute as to the protected class to which plaintiff claims to belong.  Defendant notes that "plaintiff casts his status as 'South Slav' against a class of people he alleges to be 'Caucasian.'" (Def. Mem. of Law at 10.) Because "this is a contrast between persons of differing 'national origin' and 'race[,]'" defendant suggests that plaintiff may not have appropriately pled his claims. Nevertheless, defendant concedes that "for the purpose of this motion only, 'Caucasian' is to be read as 'American.'" (Def. Mem. of Law at 10-11.)  The court therefore proceeds as if there is no dispute on this element.

experience.  The second position required strong interpersonal and communication skills.  Plaintiff's disciplinary history, coupled with the fact that his current position does not require him to work closely with other people rendered him facially less qualified (and probably unqualified) for that position than he otherwise might have been.

Aside from several bald assertions that he was "qualified" for each of the two positions, plaintiff offers no evidence that he met the requisite qualifications sufficient to satisfy his burden on the first disputed element of the prima facie case - certainly not with respect to the first position.  It is doubtful that he was qualified for the second position but defendants have not provided the specific minimum requirements for that position.  Plaintiff's argument that the individuals eventually selected were less qualified than he is also unsupported.  Plaintiff simply alleges that he was more qualified, but he produces no evidence to support his bald assertion.

In any event, assuming plaintiff did meet his prima facie burden, the burden shifts to defendant to offer a non-

13

discriminatory reason for his adverse action.  Once an employer provides a legitimate, nondiscriminatory explanation for its actions, as defendant has done here, under McDonnell Douglas, "the inference of discrimination disappears and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination."  Kosereis, 331 F.3d at 212 (citation omitted).  While making "the prima facie case" is "not onerous," id. at 213 (citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 1999)), and requires only "a 'small showing,'" id. (citing Reed v. LaPage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001)), "the pretext analysis . . . is more demanding."  Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981)).

"Plaintiffs can show that an employer's stated reasons are pretextual in any number of ways.  One method is to produce evidence that the plaintiff was treated differently than other similarly situated employees."  Kosereis, 331 F.3d at 214 (citing Santiago-Ramos, 217 F.3d at 55).  Specifically, "a plaintiff must show 'that others similarly situated to him in all relevant respects were treated differently by the employer.'"  Id. (citing

14

Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999)).

Plaintiff here has arguably not met even the prima facie burden, but, again, assuming he did, the burden shifted to defendant to offer a nondiscriminatory reason for its actions. See Gu, 312 F.3d at 11. Defendant did so by explaining that its officials reasonably believed plaintiff was insufficiently qualified for the open positions. The burden then shifts back to plaintiff to demonstrate that the non-discriminatory reason put forth by defendant is merely a pretext for discrimination. Plaintiff has utterly failed to offer any evidence of pretext, much less evidence sufficient to posit a genuine dispute of material fact relative to that issue.

Accordingly, defendant is entitled to judgment as a matter of law on Count I, plaintiff having failed to offer evidence from which a pretext for discrimination could be found.

B.  Disparate Treatment - Tuition Reimbursement (Count II)

Although there appears to be no controlling precedent related to disparate treatment in the administration of tuition reimbursement programs, there is some Title VII authority related to employee benefit programs.  "[A]n employee establishes a prima facie case of benefit discrimination by . . . showing that he or she is a member of a protected class, was eligible to receive a benefit, was denied a benefit, and non-protected group members received the benefit."  Ramos v. Baxter Healthcare Corp., 256 F. Supp. 2d 127, 134 (D.P.R. 2003) (citing Lex K. Larson, Larson's Employment Discrimination § 14.01 (2d ed. 1994)).  Defendant asserts that it is entitled to summary judgment on this claim because it has articulated a legitimate, nondiscriminatory reason for denying plaintiff tuition reimbursement benefits.

Plaintiff has satisfied his burden to establish a prima facie case of benefit discrimination.  As with Count I, there is no dispute that plaintiff is a member of a protected class.  Moreover, plaintiff established, and defendant effectively concedes, that plaintiff is eligible to participate in the tuition reimbursement program as demonstrated by the defendant's

16

past reimbursement of over $20,000 in education-related expenses. Finally, the company concedes that two other employees, both Caucasian males, continue to receive tuition benefits.

As plaintiff has met his burden to establish at least a prima facie case of discrimination, under McDonnell Douglas, the burden shifts to defendant to "'articulate some legitimate, nondiscriminatory reason' for its actions." Gu, 312 F.3d at 11. Here, defendant asserts that it denied plaintiff any future tuition reimbursement benefits because his studies were unrelated to his current or future work with Water Pik.

It is apparent that Water Pik's tuition reimbursement program is designed to help employees improve skills and abilities of significance to the company. To that end, the policy requires that "the subject of the class or program of study must be directly related to your current position or to future positions in the company." (Hope-Reese Aff. ¶ 11.) Although plaintiff stated his objectives in terms consistent with that policy - "to obtain his Master's Degree so that he can obtain a better position within the company" (Compl. ¶ 13), the

company asserts that the positions for which plaintiff is otherwise qualified do not require academic degrees, particularly not an MBA. Moreover, plaintiff made specific statements about his future plans to leave the company as soon as he received his Master's degree. The company has articulated a legitimate, nondiscriminatory business reason for rejecting plaintiff's tuition reimbursement requests under the benefit plan.

Under the McDonnell Douglas framework, the burden shifts back to the plaintiff to demonstrate that the nondiscriminatory reason set forth by defendant is merely a pretext for discrimination. In attempting to meet that burden, plaintiff points to "several other employees" who still receive tuition reimbursement benefits. (Compl. ¶ 14.) Plaintiff fails, however, to demonstrate that those other employees are similarly situated in all relevant respects. To the contrary, the company has shown, and plaintiff has failed to refute, that the two individuals presently receiving tuition reimbursement benefits are pursuing academic programs that will benefit the company, unlike plaintiff's academic pursuits, which are unlikely to

18

either benefit Water Pik, or enhance plaintiff's opportunities for promotion within the company.

Having failed to produce evidence that defendant's justification for denying plaintiff's tuition benefits is merely a pretext for discrimination, plaintiff's benefit denial claim fails, and defendant is entitled to judgment as a matter of law on Count II.

C.  Disparate Treatment - Compensation (Count III)

Although the First Circuit has yet to articulate a specific test against which to measure the sufficiency of a prima facie case of disparate treatment in compensation, the Seventh Circuit has held that:

> [t]o state a prima facie case of disparate compensation, a plaintiff must show that: (1) [he or] she is a member of a protected group; (2) [he or] she was fulfilling her employer's legitimate performance expectations; and (3) [he or] she suffered an adverse employment action in that [he or] she was paid a lower salary than a 'similarly situated' nonprotected class member.

Dandy v. UPS, Inc., 388 F.3d 263, 274 (7th Cir. 2004) (citing Hildebrandt v. Ill. Dept. of Natural Res., 347 F.3d 1014, 1030-31 (7th Cir. 2002)).

As with plaintiff's other claims, there is no dispute that he is a member of a protected class. It is also undisputed that, generally, plaintiff was fulfilling defendant's performance expectations. Plaintiff received a satisfactory rating on his most recent performance review and, other than a memorandum regarding inappropriate behavior issued on March 22, 2002, there is no allegation that plaintiff failed to satisfactorily perform the duties of his job. Defendant argues it is entitled to summary judgment because plaintiff has not established the third element of the prima facie case, that he was paid at a lower rate than similarly situated employees outside the protected class.

Although the precise nature of plaintiff's claim is difficult to discern from the pleadings he has filed, it appears that he claims that his two most recent pay increases[2] should

_____

[2] Those increases were from $10.80 to $11.04 per hour on February 2, 2003 (an increase of $0.24), and from $11.04 to

have taken effect in 1999.  But like many of the assertions in his complaint, this one is supported by neither evidence nor a logical explanation.  Defendant has offered evidence that plaintiff's rate of pay was increased on twelve separate occasions, the last being part of a companywide restructuring of its position classification and compensation scheme, which resulted in a pay increase for all individuals falling within plaintiff's job classification.  Except for a long-winded narrative of plaintiff's personal assessment of the company's compensation policies, plaintiff has not offered any evidence to refute that produced by defendant.  Plaintiff also failed to produce any evidence which demonstrates that other, similarly situated employees, were paid more than he for performing substantially identical work.

Because plaintiff has failed to demonstrate that he was paid less than similarly situated employees outside the protected class, he has failed to establish a prima facie case under Title VII.  Consequently, defendant is entitled to summary judgment on Count III.

--------

$12.56 per hour on May 11, 2004 (an increase of 1.52)  (Hope-Reese Aff. ¶ 14.)

21

D.  Retaliation (Count IV)

To establish a prima facie case of retaliation, a plaintiff must show that "(1) [he or she] engaged in protected conduct under Title VII; (2) [he or she] suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity."  Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003) (citing White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000)).

For purposes of this motion, the court assumes that plaintiff first engaged in protected conduct when he complained by e-mail on March 24, 2002, about being denied tuition benefits. The court further assumes, for purposes of this motion, that the denial of tuition benefits and denial of promotions constitute adverse employment actions.  Given those assumptions, plaintiff must produce evidence demonstrating that the adverse employment actions were causally related to his protected conduct.  He has failed to do so.

Most of the adverse employment actions plaintiff claims to have suffered took place before he first engaged in protected

22

conduct.  The first promotion was denied on January 2, 2002, tuition benefits were first denied on March 8, 2002, and plaintiff claims he has been underpaid since 1999.  All of these adverse employment actions took place before his first complaint to the company on March 24, 2002.  The sequence of events does not support plaintiff's claim that adverse employment actions were causally related to his protected conduct.

The only adverse employment action that took place after plaintiff's protected conduct was the second promotion denial, dated April 16, 2003.  In that one instance, the sequence of events supports a possibility of a causal link.  But plaintiff's claim still fails because he does not offer any evidence to support his assertion.  In his objection to summary judgment, plaintiff summarily criticizes defendant's evidence and questions its validity, but produces no evidence of his own tending to refute defendant's supported assertions.  Plaintiff has, thus, failed to establish a prima facie case of retaliation.

Even if plaintiff had satisfied the three elements of a prima facie case of retaliation, his claim would still fail

because, under the McDonnell Douglas framework, defendant has offered a legitimate, nondiscriminatory reason for not promoting plaintiff.  Plaintiff has failed to produce evidence that the reason provided by defendant was merely a pretext for discrimination.

In short, the sequence of the majority of adverse employment actions juxtaposed with the date of plaintiff's initial complaint to the company does not support a conclusion that the former was caused by the latter.  In the one instance where the sequence of events might logically support a causal link, plaintiff failed to produce evidence sufficient to establish that his protected conduct was causally related to the adverse employment action. Defendant is therefore entitled to judgment as a matter of law on Count IV.

II.  State Claims

Under the provisions of 28 U.S.C. § 1367(a), a federal court with original jurisdiction over federal claims may also exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction

. . ." Another portion of the same statute, § 1367(c), provides that a district court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it had original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court of Appeals has held that "if the [district] court dismisses the foundational federal claims, it must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)). The factors district courts consider when determining whether to exercise supplemental jurisdiction over state law claims include: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity. See id. Explaining the fairness and comity factors, the Supreme Court noted:

25

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).

In the interest of comity, this court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

**CONCLUSION**

Defendant's motion for summary judgment (document no. 13) is granted as to the Title VII claims (Counts I, II, III, and IV), and plaintiff's motion for partial summary judgment (document no. 15) is necessarily denied. The court declines to exercise supplemental jurisdiction over the state law claims (Counts V and VI) which are, accordingly, dismissed without prejudice. The clerk of the court shall enter judgment in accordance with this order and close the case.

26

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 6, 2005

cc:  Rusmir Begovic, pro se
     Lee S. MacPhee, Esq.

27